Marc L. Parris, Esq. County Attorney, Rockland
You have asked whether Rockland County is authorized to adopt a local law mandating that at least 50 percent of persons hired by contractors on county public works projects be bona fide Rockland County residents.
Under New York Constitution, Article IX, § 2(c)(10) and Municipal Home Rule Law, § 10(1)(ii)(a)(12), a county has the power to adopt local laws relating to "the government, protection, order, conduct, safety, health and well-being of persons or property therein," as long as such laws are "not inconsistent with the provisions of the constitution or any general law". When exercising its police powers, a local government must have a reasonable basis upon which to act (Matter ofSpielvogel v Ford, 1 N.Y.2d 558, 562 [1956], app dsmd for want of a substantial federal question, 352 U.S. 957 [1957]). In addition, the enactment must be reasonably related to some actual manifest evil and must not be arbitrary (id. at 563). It is the province of the county legislature to determine whether there exists a reasonable basis for an exercise of the police power.
White v Massachusetts Council of Construction Employers, 460 U.S. 204
(1983), upheld an executive order by the mayor of Boston which required 50 percent of those hired by contractors on all construction projects either funded or administered by the city be bona fide Boston residents. At issue was the validity of the order under the Commerce Clause (US Const, Art I, § 8, cl 3), which provides that Congress shall have the power "to regulate commerce * * * among the several States * * *." Two types of projects were evaluated by the Supreme Court: one type, in which the city expended only its own funds in entering into construction contracts for public projects, and a second type, which was funded in part through certain federal programs that authorized the city's administration of the project (ibid.).
With regard to the application of the mayor's order to city-funded projects, the Court found that the city was a market participant, and thus the Commerce Clause was not implicated:
 "if the city is a market participant then the Commerce Clause establishes no barriers to conditions such as those which the city demands for its participation. Impact on out-of-state residents figures in the equation only after it is decided that the city is regulating the market rather than participating in it, for only in the former case need it be determined whether any burden on interstate commerce is permitted by the Commerce Clause." (Emphasis added; id., at 4213.)
With regard to the application of the mayor's order to projects which receive funds from federal sources, the Court found that the Commerce Clause simply did not apply, since:
 "The Commerce Clause is a grant of authority to Congress and not a restriction on the authority of that body * * *. Congress, unlike a state legislature authorizing similar expenditures, is not limited by any negative implications of the Commerce Clause in the exercise of its spending power. Where state or local government action is specifically authorized by Congress, it is not subject to the Commerce Clause even if it interferes with interstate commerce * * *. Thus, if the restrictions imposed by the city on construction projects financed in part by federal funds are directed by Congress then no dormant Commerce Clause issue is presented." (Ibid.)
The Court further noted that the federal regulations for each affected program receiving federal funds "affirmatively permit the type of parochial favoritism expressed in the order" (id. at 4214).
Thus, the Commerce Clause is not an impediment to the Rockland County's proposed regulation. We note, however, that the federal regulations for any projects receiving federal funds should be checked on a project-by-project basis to see if such a preference is prohibited.
In White, the question of whether the mayor's order violated the Privileges and Immunities Clause (US Const, Art IV, § 2, cl 2) was not considered by the Court, since:
 "This question has not been, to any great extent, briefed or argued in this Court. We did not grant certiorari on the issue and remand without passing on its merits." (51 USLW at 4214, fn 12.)
Nevertheless, the Court did refer to the Massachusetts Supreme Judicial Court's treatment of the Privileges and Immunities issue:
 "The preference is for inhabitants of the city, and its `negative' effect is felt in significant part by other citizens of the Commonwealth, as well as by residents of other States. In such circumstances it may be more difficult to find a violation of the privileges and immunities clause because the discrimination adversely affects citizens of the Commonwealth as well." (Ibid.)
It should be noted that the Massachusetts court also based its decision in the case upon the Commerce Clause (ibid.; Massachusetts Council ofConstruction Employers v Mayor of Boston, 425 N.E.2d 346 [1981]).
In a similar situation, the New Jersey Supreme Court held that a 40 percent resident hiring quota for contractors on the City of Camdem's public works projects was not a violation of the Privileges and Immunities Clause, since the city ordinance:
 "does not aim primarily at out-of-state residents. It almost certainly affects more New Jersey residents not living in Camden than it does out-of-state residents. Because the Camden ordinance does not affect `the States * * * treatment of each other's residents,' Hicklin v. Orbeck, 437 U.S. 518, 523, it does not violate any privilege of state citizenship." (United Building and Construction Trades Council v Camden, 443 A.2d 148, 160 [1982].)
Although section 222 of the New York State Labor Law, which mandated preferential hiring of New York State citizens on public works projects, was found to violate the Privileges and Immunities Clause in Salla vCounty of Monroe, 48 N.Y.2d 514 (1979), cert den 446 U.S. 909 (1980), section 222 was a state law aimed entirely at out-of-state residents. In our opinion, a local law which mandates the hiring of local residents for county public works contract projects, and thus aims at everyone living outside of the county, should not suffer from the same Privileges and Immunities Clause infirmity as section 222.
Since we have found no case law indicating that non-residents seeking county public works employment are a suspect class or that employment on a local public works project is a fundamental right, the only equal protection clause (US Const, Amend XIV, § 1) consideration is whether the category "bona fide Rockland County residents" is a rational classification (McGowan v Maryland, 366 U.S. 420 [1961]: "constitutional safeguard offended only if classification rests on grounds wholly irrelevant to the achievement of the state's objective" id. at 425). Rockland County would need to show that conditions exist to justify such a classification.
In McCarthy v Philadelphia Civil Service Commission, 424 U.S. 645
(1976), the U.S. Supreme Court upheld a Philadelphia regulation which required city employees to be residents of the city. The regulation had been challenged as violative of a firefighter's federally protected right to interstate travel (ibid.). The Court found the regulation to be a bona fide continuing residency requirement (as distinguished from a durational residency requirement) which was not irrational and noted that there is no support for a claim of a constitutional right "to be employed by the city of Philadelphia while living elsewhere" (id. at 647). The Court reiterated that it does not question the validity of appropriately defined and uniformly applied bona fide residency requirements, and that this case involved an example of such a requirement (ibid.).
Continuing residency requirements need only pass the rational basis test in order to be found constitutional. (Wardwell v Board of Education ofCity School District, 529 F.2d 625, 628 [1976].) City residency requirements for city employees bear a rational relationship to one or more legitimate State purposes, such as:
 "promotion of ethnic balance of the community, reduction of high unemployment rates * * * enhancement of employee performance, diminution of absenteeism and tardiness, ready availability of trained personnel and general economic benefits." (Wright v City of Jackson, 506 F.2d 900, 903 [1975].)
Following McCarthy, the Fourth Department of the Appellate Division held that local governments may lawfully require as a condition of employment that employees reside within their territorial limits (Mandelkern v Cityof Buffalo, 64 A.D.2d 279 [4th Dept, 1978]). We have stated that cities may require future employees to be residents of the city, except certain employees whose qualifications are set by general law (1978 Op Atty Gen [Inf] 308).
Since it is the county's money which is being spent for the county's public works projects, whether directly to its own employees or to contractors employing others, the rationale of Wright could, in our opinion, be extended to workers on public works contracts projects (seePeople v Crane, 214 N.Y. 154, 165 [1915]).
Consideration must, however, also be given to General Municipal Law, § 103 which provides that:
 "all contracts for public works * * * shall be awarded * * * to the lowest responsible bidder."
The purpose of this provision is to invite competition:
 "to guard against favoritism, improvidence, extravagance, fraud and corruption, and to secure the best work or supplies at the lowest price practicable, and they are enacted for the benefit of property holders and taxpayers, and not for the benefit or enrichment of bidders, and should be so construed and administered as to accomplish such purpose fairly and reasonably with sole reference to the public interest." (American Institute of Steel v County of Erie, 32 A.D.2d 231 [4th Dept., 1969].)
Restriction of the field of bidders could preclude the submission of the lowest bid and thus violate section 103. For example, the Appellate Division found Erie County's "Buy American" resolution, which required domestic manufactured steel to be used for public works projects, even though imported steel was significantly less expensive, to be invalid because it removed the lowest potential bid from the field (ibid.):
 "There may be excellent reasons why United States industry and labor should be protected — at the expense of the taxpayers — from importation of foreign manufactured steel. The attempt here, however, by a county legislative body to intrude into this area of mandated competitive bidding appears to be as much in conflict with the provisions of section 103 of General Municipal Law as would an attempt by county officials to confine bidding to one company, firm or individual * * *" (ibid.).
Bid specifications that arbitrarily reduce the field of eligible bidders are invalid (Mtr. of Warren Bros. Co. v Craner, 30 A.D.2d 437
[4th Dept, 1968]).
It is quite common and usually necessary to include in the request for bids for a purchase contract or a public works contract, specifications defining, for example, the capabilities of the product or the materials to be used in the construction. However, a county residency requirement is not such a specification and, in our opinion, therefore is not an objective contemplated by the competitive bidding laws (see, AmericanInstitute of Steel v County of Erie, supra, p 233). Thus, a determination must be made whether the impact of the proposed local law is to discourage bidders and increase costs in violation of the competitive bidding statute. For example, where a contract involves highly specialized work which is done primarily by out-of-county contractors with specially trained crews of out-of-county residents, the training of county residents to do such work might increase the project's cost and discourage the submission of bids. Therefore, we believe that the determination whether the principles of competitive bidding are being undermined by a county resident employment requirement must be made as a question of fact, on a case-by-case basis.
We conclude that Rockland County is generally authorized to adopt a local law mandating that at least 50 percent of those hired by contractors on public works projects be bona fide Rockland County residents, so long as application of such a local law does not violate the competitive bidding requirements established by section 103 of the General Municipal Law.