AMERICAN INSTITUTE FOR IMPORTED STEEL, INC., et al., Appellants-Respondents, v. COUNTY OF ERIE et al., Respondents-Appellants.

Fourth Department, June 27, 1969.

*Moot, Sprague, Marcy, Landy & Fernbach (Seymour Graubard* of counsel), for appellants-respondents.

*George M. Nelson, County Attorney (Milton S. Weisberg* of counsel), for respondents-appellants.

*Hodgson, Russ, Andrews, Woods & Goodyear* for Bethlehem Steel Corporation and others, *amici curiæ.*

*Bredhoff, Gottesman & Cohen* and *Thomas E. Krug* for United Steelworkers of America, *amicus curiæ.*

BASTOW, J. This appeal presents the basic issue as to the validity of a resolution adopted by the Erie County Legislature in April, 1968. The enactment mandated that contract documents for capital improvement projects of the county should provide that only steel made in mills located in the United States would be supplied in the performance of contracts and subcontracts. Thereafter, in implementation of the resolution, defendant Bossert, County Commissioner of Public Works, in prepar-

ing specifications for the construction of a proposed county building in substance mandated that only domestic manufactured steel could be used.

Thereafter petitioners commenced this proceeding pursuant to article 78 of the CPLR wherein they sought, among other relief, a determination that the resolution was invalid and unconstitutional. Special Term denied all relief sought and dismissed the petition. In the judgment, however, the court decreed that it considered the proceeding to be not only one brought pursuant to article 78 of the CPLR but also an action for declaratory judgment. Contrary to the contentions presented by defendants' cross appeal from this portion of the judgment, we agree that the petition should not be narrowly construed as an article 78 proceeding. (Cf. *Matter of Lakeland Water Dist.* v. *Onondaga County Water Auth.*, 24 N Y 2d 400.)

Turning to the merits of the controversy we conclude that the enactment was in excess of the power of the Erie County Legislature and is invalid because of its conflict with the competitive bidding requirement of section 103 of General Municipal Law.

That section mandates that " all contracts for public works * * * shall be awarded * * * to the lowest responsible bidder ". This implements the policy of the State which is declared in section 100-a of the same law to be that the article, of which both sections are a part, shall be construed " in the negotiation of contracts for public works and public purchases to which political subdivisions or any district therein is a party so as to assure the prudent and economical use of public moneys for the benefit of all the inhabitants of the state and to facilitate the acquisition of facilities and commodities of maximum quality at the lowest possible cost."

The provisions of a statute, such as section 103 of General Municipal Law, have been stated to be " for the purposes of inviting competition, to guard against favoritism, improvidence, extravagance, fraud and corruption, and to secure the best work or supplies at the lowest price practicable, and they are enacted for the benefit of property holders and taxpayers, and not for the benefit or enrichment of bidders, and should be so construed and administered as to accomplish such purpose fairly and reasonably with sole reference to the public interest." (10 McQuillin, Municipal Corporations, 3d 1966 Ed., § 29.29.)

In *Gerzof* v. *Sweeney* (16 N Y 2d 206, 208) the court wrote that " The law [General Municipal Law, § 103] is based, this court long ago declared, ' upon motives of public economy, and originated, perhaps, in some degree of distrust of the officers

to whom the duty of making contracts for the public service was committed. If executed according to its intention, it will preclude favoritism and jobbing, and such was its obvious purpose. It does not require any argument to show that a contract made in violation of its requirements is null and void.' (*Brady* v. *Mayor of City of N. Y.*, 20 N. Y. 312, 316–317.)''

There is proof in the record that the per ton savings by the use of imported instead of domestic manufactured steel would be from 8 to 20 dollars depending on the particular item in which the steel is a component part. The county rather feebly contends that the resolution has some relationship to quality control of steel. Any such intent on the part of the legislative body has not been established. To the contrary the words of the member who sponsored the resolution make clear the intent: '' I would hope that ' public projects ' would be built with American products which is in the best interest of our American economy and I, therefore, urge an affirmative vote on my resolution''.

There may be excellent reasons why United States industry and labor should be protected — at the expense of the taxpayers — from importation of foreign manufactured steel. The attempt here, however, by a county legislative body to intrude into this area of mandated competitive bidding appears to be as much in conflict with the provisions of section 103 of General Municipal Law as would an attempt by county officials to confine bidding to one company, firm or individual (cf. *Gerzof* v. *Sweeney,* 16 N Y 2d 206, *supra*; *Matter of Olean Std. Equip. Co.* v. *Cattaraugus County Bd. of Supervisors,* 30 A D 2d 758) or to exclude arbitrarily a potential bidder by a requirement that its plant be within the county (cf. *Matter of Warren Bros. Co.* v. *Craner,* 30 A D 2d 437).

A somewhat similar issue was passed upon in *Texas Highway Comm.* v. *Texas Assn. of Steel Importers* (372 S. W. 2d 525 [Tex.]) where the Highway Commission by administrative order specified the use of domestic steel by contractors although statutory law mandated that highway work be done by competitive bidding. In declaring the order invalid the court wrote (p. 529): '' It is wholly unsound to say that as the competitive bidding statute has for its purpose the securing of the best work and materials at the lowest practicable price, no cause of action is shown unless it [is] demonstrated that as a result of the restrictive order an actual rise in material costs has taken place. Many factors enter into the cost of materials. The Legislature has in effect declared that open bidding contributes to the lowering of costs while restrictive bidding tends to an

increase in costs. The Legislature has said what shall be done in the situation and impliedly said what shall not be done. Noncompliance with the mandatory statutory procedures cannot be excused by blandly contending that no one was actually hurt by the law violation.''

In view of our conclusion that the resolution is in fatal conflict with section 103 of General Municipal Law it is unnecessary to reach or pass upon the contention of petitioners that the local legislative act is an unconstitutional infringement upon the plenary power of the United States Congress to regulate interstate and foreign commerce.

The last four decretal paragraphs of the judgment should be reversed, a declaration made that the resolution adopted on April 16, 1968 by the Erie County Legislature is invalid and defendants should be enjoined from attempting to implement or enforce the provisions of the resolution. The first decretal paragraph of the judgment should be affirmed.

DEL VECCHIO, J. P., MARSH, WITMER and MOULE, JJ., concur.

Judgment, as to last four decretal paragraphs, unanimously reversed on the law and facts, with costs, declaration made that the resolution adopted on April 16, 1968 by the Erie County Legislature is invalid, and defendants enjoined from attempting to implement or enforce the provisions of the resolution; first decretal paragraph of judgment affirmed.