OPINION OF THE COURT
 

 Chief Judge Cooke.
 

 This appeal is concerned with a contractor’s obligation to provide “supplements,” or fringe benefits, to employees engaged in public works projects. Under subdivision 3 of section 220 of the Labor Law, supplemental fringe benefits must be provided to such employees “in accordance with the prevailing practices in the same trade or occupation in the locality within the state” where the public work is located. This requirement will be fulfilled when employees are supplied with the cash equivalent of the cost of obtaining the prevailing benefits or by providing am equivalent benefits plan, or by a combination of benefits and cash equal to the cost of the prevailing benefits.
 

 Respondent Comptroller of New York City, as the City’s fiscal officer, is empowered to determine the schedules of the “prevailing” supplements to be provided and wages to be paid to the different types of workers engaged in public construction projects by or on behalf of the City (see Labor Law, § 220, subd 3; subd 5, pair e).
 
 [1]
 
 Respondent surveyed approximately 5,000 electrical workers in the New York City area in order to determine the prevailing supplemental benefits provided in the electrical contracting industry. Approximately 90% of the electrical workers surveyed citywide were found'to belong to one union local, Local 3 of the International Brotherhood of Electrical Workers. As a result of Local 3’s predominance in the trade, the supplemental benefits required by its collective bargaining agreement
 
 *219
 
 were considered by respondent to be the prevailing benefits that must be paid to all employees performing electrical work under public works contracts.
 
 [2]
 
 Accordingly, respondent issued a schedule detailing the particular benefits provided under the Local 3 contract and the cost to an employer of providing each of these prevailing benefits per employee (see Labor Law, § 220, subd 3).
 
 [3]
 

 Petitioner Action Electrical Contractors Co., Inc., employed approximately 35 people and derived its revenues almost exclusively from public contracts. Through its membership in United Construction Contractors Association, which consists of 84 other contractors, petitioner had negotiated a collective bargaining agreement with Local 363 of the Allied and Industrial Trade Workers, International Brotherhood of Teamsters. Among other things, this contract required the employers to provide specified supplemental benefits by making contributions to a fund managed by Local 363.
 

 In April 1980, petitioner was awarded two contracts with the New York City Housing Authority to perform electrical work at housing projects in Brooklyn. Two years later, respondent received a letter from a member of Local 3’s Joint Industry Board, forwarding a complaint from one of petitioner’s employees that he was paid less than the prevailing wage. After conducting an investigation, respondent charged petitioner with, among other things, failing to pay the prevailing rate of wages and failing to provide certain prevailing supplemental to some employees engaged in performing work under the Brooklyn housing contracts.
 

 After a hearing, it was determined that petitioner had not provided its laborers and electricians with the prevailing supplemental benefits as set forth in respondent’s schedule or with an equivalent benefits plan. As to its laborers, petitioner was found to have omitted making any contributions on their behalf
 
 *220
 
 to a plan which would provide the types of benefits found prevailing for their type of work. Instead, petitioner had paid the laborers additional cash in an amount equal to the cost, listed on respondent’s schedule, of obtaining the required benefits. As to its electricians, petitioner was found to have provided some supplemental benefits through its contributions to Local 363’s plan, but these were less than the prevailing contributions required by Local 3’s contract. Petitioner sought to comply wiith respondent’s schedule of prevailing supplements by making cash payments to these workers for the difference in cost between the prevailing benefits and the benefits actually provided through Local 363.
 

 The hearing officer rejected petitioner’s defenses that purely cash payments to the laborers could be an adequate substitute for benefits plans and that its total package of benefits for the electricians was essentially equivalent to the sum of the prevailing benefits supplied by Local 3. In the hearing officer’s view, petitioner had not met its burden of proving the equivalency of the similar types of benefits it offered because it failed to give sufficient details of its plans for comparison. Further, its benefits plan was deemed not equivalent to that of Local 3 because the latter provided superior coverage in some areas and an additional type of benefit. Petitioner’s cash payments in addition to benefits were not deemed to fulfill its obligation. Petitioner’s two violations were deemed willful because petitioner had ample notice of and was aware of its obligations. Damages were assessed for the difference in amounts petitioner actually contributed to Local 363’s funds and what its costs would have been under respondent’s schedule of prevailing benefits. This was offset entirely by the amount of cash it had paid to :its employees in lieu of benefits. In addition, a $1,500 penalty was assessed and petitioner was barred from bidding on public contracts for five years (see Labor Law, § 220-b, subds 2, 3, par b).
 

 Respondent adopted the findings, report, and recommendation of the hearing officer. A divided Appellate Division confirmed respondent’s determination holding that it was supported by substantial evidence. On petitioner’s appeal, this court now reverses.
 

 The principal issue here is whether an employer can fulfill iits duty to provide the prevailing supplements by paying cash directly to the employees in the amount of the cost of these benefits, rather than being limited to providing the supplements by contributions to an in-kind benefits package that is equivalent to the prevailing supplements plan.
 

 
 *221
 
 Resolution of this quandary requires consideration of the pertinent statutory provisions. In pursuing this task, we are mindful of the deference generally given to administrative determinations if they are not irrational, unreasonable, nor inconsistent with the governing statute (see
 
 Matter of Trump-Equitable Fifth Ave. Co. v Gliedman,
 
 57 NY2d 588, 597). When, however, interpreting a statute does not require any technical expertise, as in the present situation, the courts are not bound by the agency’s construction (see
 
 id.; Kurcsics v Merchants Mut. Ins. Co.,
 
 49 NY2d 451, 459).
 

 As noted above, the Labor Law requires public works contractors to provide the locally prevailing supplements as determined by the fiscal officer (see Labor Law, § 220, subd 3). “Supplements” are defined as “all remuneration for employment paid in any medium other than cash, or reimbursement for expenses, or any payments which are not ‘wages’ within the meaning of the law, including, but not limited to, health, welfare, non-occupational disability, retirement, vacation benefits, holiday pay and life insurance.” (Labor Law, § 220, subd 5, par b.)
 

 Superficially, the statute appears clear; an employer must provide supplements. In application, however, the statute’s ambiguity becomes obvious. It does not specify whether compliance is to be determined by consideration of the employer’s expenditures for benefits or by consideration of the qualitative nature of the actual benefits made available. For example, the definition of “supplements” refers to “payments * * * including * * * health, welfare, * * * vacation benefits, holiday pay” (Labor Law, § 220, subd 5, par b). Respondent is directed to determine “the amount of such supplement” found to be prevailing (see
 
 id.,
 
 § 220, subd 5, par c). It is unclear whether such “payments” and “amounts” refers to the cost of obtaining or the value of the benefit purchased. Arguably, providing the cost of the benefit would suffice as respondent’s schedules list the cost per hour or day for each type of benefit. Of importance, however, is the fact that nothing in section 220 expressly prohibits an employer from providing the prevailing supplements either totally by payments in cash, partially in benefits and partially in cash, or totally in benefits by direct contribution to a benefits fund.
 

 When, as in this case, there exists some doubt as to the meaning of a statutory provision, the legislative history may be examined for evidence of the Legislature’s intent (see
 
 Uniformed Firefighters Assn. v Beekman,
 
 52 NY2d 463, 471). In 1956, the provision for “supplements” was added to section 220 (see L 1956, ch 750, § 1). Prior to the amendment, nonunion
 
 *222
 
 contractors were perceived by some to hold an unfair advantage through lower labor costs because the then-existing statute only required payment of the prevailing wage. These firms could submit lower bids than union contractors who had to pay lor costly fringe benefits. In order to “remedy this defect” by equalizing competition, Governor Harriman requested that the Labor Law be amended to include “ ‘fringe’ benefits — such as vacati on pay, various forms of insurance, and pensions — as an element in the wage rate” (Governor’s Ann Message to Legis, 1956 McKinney’s Session Laws of NY, p 1517). The amendment passed effectively required all types of contractors on public works to assume the cost of the prevailing fringe benefits in their locality. Most State officials concerned with the amendment supported it and viewed it as “designed to eliminate unfair competitive bidding on public work contracts * * * [by] [t]he inclusion of fringe benefits in the prevailing rate of wage” (Memorandum in Support of Bill by Commissioner of Labor, March 29,1956, p 1; see, also, Letter to Governor from Commissioner of Commerce, March 29, 1956; Memorandum in Support of Bill by Dept of Public Works, April 10, 1956; Governor’s Memorandum Approving Bill, Public Papers of Governor Harriman, pp 18, 418).
 

 The available documentary background to this amendment reflects only a concern to equalize contractors’ minimum labor costs. This apparent purpose is fulfilled when a contractor pays in cash, totally or partially, the cost of prevailing supplemental benefits to his employees. The legislative history does not disclose any concern to protect workers from their possible failure to put their additional cash towards a benefits plan. Thus, this provision should not be interpreted to require that the employ er maintain or contribute directly to a benefits plan equivalent in kind to the prevailing one in order to comply with the statute. Supplements may be provided by cash payments equal to the cost of providing the prevailing supplements, a combination of cash and benefits, or by an equivalent benefits plan.
 

 Respondent nevertheless argues that the statute requires a qualitative equivalency of the prevailing benefits, with no cash substitutes in any amount. In support of this, respondent relies upon the statutory language defining “supplements” as any “remuneration for employment paid in any medium other them cash” (Labor Law, § 220, subd 5, par b). However, this is but one of three disjunctive clauses. “Supplements” may also be “any payments which are not ‘wages’ ” such as life insurance, health, disability, or vacation benefits, or holiday pay. Obviously, cash
 
 *223
 
 may be involved in providing such fringe benefits, both in their cost and in their delivery to employees when a claim arises. Thus, respondent’s proposition is not supported by the statutory language.
 

 Respondent evaluated petitioner’s compliance with the statute according to the erroneous standard that no cash payments could be made to employees as a means of providing the prevailing supplements. This was an arbitrary and irrational interpretation of the statute because its provides no such limitation. Therefore, respondent’s determination cannot be sustained (see
 
 Matter of Trump-Equitable Fifth Ave. Co. v Gliedman,
 
 57 NY2d 588, 597,
 
 supra).
 
 It is unnecessary to remit the matter for any further proceeding with respect to respondent’s determination, however (cf.
 
 id.,
 
 at p 595). Respondent’s own assessment of damages recognized that petitioner had paid the full cost of providing the prevailing supplements, in cash to its laborer employees and in benefits and cash to its electricians. Thus, there is no question that petitioner complied with section 220 of the Labor Law.
 

 Accordingly, the judgment of the Appellate Division should be reversed, with costs, the determination of respondent Comptroller of the City of New York annulled, and the matter remitted to the Appellate Division for determination of the issue not passed upon by that court with respect to the New York City Housing Authority.
 

 Judges Jasen, Jones, Wachtler, Meyer, Simons and Kaye concur.
 

 Judgment reversed, with costs, determination of respondent Comptroller of the City of New York annulled, and matter remitted to the Appellate Division, First Department, for further proceedings in accordance with the opinion herein.
 

 [1]
 

 . We note that there may be a question as to the jurisdiction of respondent over this matter concerning petitioner’s contracts with the New York Ci ty Housing Authority (see Labor Law, § 220, subd 5, par e). However, as the issue has not been raised by either party, it is not addressed by this court.
 

 [2]
 

 . Section 220 (subd 5, par c) of the Labor Law provided, at that time, that the prevailing supplemental benefits would be those provided to the majority of the workers in the same trade or occupation. This section has been amended to provide that the prevailing practice “shall be the practice of providing supplements, as hereinbefore defined, as provided by virtue of collective bargaining agreements between bona fide labor organizations and employers of the private sector, performing public or private work provided that said employers employ a least thirty per centum of workers, laborers or mechanics in the same trade or occupation in the locality.” (L 1983, ch 447.)
 

 [3]
 

 . The schedule provides: 1) Laborer: welfare fund-$1.80/hr.; pension fund-$.95/hr; annuity fund-$.90/hr. 2) Electrician: annuity fund-$4/day; additional security benefit fund-$5/day; pension and major medical fund-7.5% of the hourly wage; vacation and holiday fund-8.5% of hourly wage; dental fund-1.5% of the hourly wage; and full Social Security.