■ ASSOCIATED BUILDERS AND CONTRACTORS, INC., et al., Appellants, v CITY OF ROCHESTER, Respondent, and ROCHESTER BUILDING TRADES COUNCIL, by CHRISTOPHER J. FARRELL, as President and on Behalf of All Building Trades Employees of Member Unions of the Rochester Building Trades Council, Intervenor-Respondent.—Upon reargument, judgment modified, on the law, to declare Ordinance 82-450 constitutional and, as modified, affirmed, without costs. Memorandum: Notwithstanding the decision in *Matter of Action Elec. Contrs. Co.*

*v Goldin* (64 NY2d 213), we conclude that Ordinance 82-450 is constitutional and does not conflict with General Municipal Law § 103 (*see, Matter of Skyway Roofing v County of Rensselaer,* 79 AD2d 1078, *lv denied* 53 NY2d 606). In *Action Elec.* (*supra,* p 218), the court held that the requirement of providing supplemental fringe benefits under Labor Law § 220 (3) could be met when "employees are supplied with the cash equivalent of the cost of obtaining the prevailing benefits or by providing an equivalent benefits plan, or by a combination of benefits and cash equal to the cost of the prevailing benefits". Unlike the contractor in *Action Elec.* which was required to pay fringe benefits under Labor Law § 220 (3), the contractors here cannot, by substituting cash payments or contributions of equivalent value, satisfy the ordinance requirement that they maintain registered apprenticeship training programs. Nor, again as distinguished from *Action Elec.,* can it be said that allowing cash payments in lieu of maintaining the training programs would be consistent with the enunciated policies underlying the legislation pertaining to the apprentice training programs or further the purpose thereof (*see,* Labor Law § 220 [3-e]; 1967 NY Legis Ann, at 191, 192; Labor Law § 810). Thus, plaintiffs, as contrasted with the plaintiff in *Action Elec.* (which could comply with section 220 [3] by making equivalent cash payments), cannot complain that by operation of the ordinance they are being arbitrarily eliminated from the class of prospective bidders or that they are the objects of unfair discriminatory treatment in the public bidding process in contravention of General Municipal Law § 103.

Plaintiffs contend that, as in *Action Elec.* (*supra*), cash payments should be accepted as the equivalent of the training programs but no plausible suggestion has been advanced as to how, to whom, or in what amounts such payments should be made, or in what respect the payments could be deemed an equivalent substitute. Paying all apprentices or novices at journeyman rates (the only performance suggested by plaintiffs as a substitute for the apprenticeship programs) for several reasons is no answer. First, if overpaying novice workers is accepted as a substitute for training programs, the particular trade, the pool of young potential trainees, and the community, would have nothing in place of the programs from which they could otherwise benefit—no programs and no equivalent replacement. Second, because under the law a contractor is not bound to hire any number of novices or apprentices (*see,* Labor Law § 220 [3-e]) there would be nothing

to prevent a contractor which has no training program from hiring only a token number of novices (thus making a minimal substitute cash payment) or, for that matter, from hiring no novices and making no substitute payment at all. Third, from the standpoint of the individual novice worker, overpaying him is obviously not the equivalent of training him in a registered program. In sum, the value of the training program to novices who might avail themselves of it, the benefit of programs to the particular trade and to the community, and the cost of maintaining the programs to the contractors are simply incapable of being translated into dollar equivalents like the fringe benefit supplements in *Action Elec.*

There is a further reason why the court's holding with respect to the fringe benefit type of supplement in *Action Elec.* (*supra*) does not compel a different result here. The policy considerations underlying the requirement that all contractors pay fringe benefits (*see,* Labor Law § 220 [3]; *Matter of Action Elec. Contrs. Co. v Goldin, supra*) are different from those underlying the legislation pertaining to apprenticeship training programs (*see,* Labor Law § 220 [3-e]; § 810) and the enactment of the ordinance. In *Action Elec.,* in deciding that the cash equivalent of fringe benefits could constitute compliance with Labor Law § 220 (3), the court, noting that the statute was ambiguous on its face, examined the legislative history for evidence of legislative intent and concluded that the purpose was to " 'eliminate unfair competitive bidding on public work contracts * * * [by] [t]he inclusion of fringe benefits in the prevailing rate of wage' " (*Matter of Action Elec. Contrs. Co. v Goldin, supra,* p 222, quoting Memorandum in Support of Bill by Commissioner of Labor, Mar. 29, 1956, at 1) and to equalize contractors' minimum labor costs (*Matter of Action Elec. Contrs. Co. v Goldin, supra,* p 222). This purpose is fulfilled when a contractor pays in cash the cost of the supplemental benefits.

In contrast, the purpose of legislation pertaining to apprenticeship programs is not to equalize contractors' labor costs as in *Action Elec.* (*supra*), but to "provide qualified, skilled craftsmen to meet future needs in private and public construction" (1967 NY Legis Ann, at 191) and to foster "sound apprenticeship training standards and to encourage industry and labor to institute training programs" (Labor Law § 810; *see, Matter of Skyway Roofing v County of Rensselaer, supra,* p 1079). When the training of apprentices is curtailed (the inevitable result of invalidating the ordinance on the authority of *Action Elec.*), the legislative purpose behind the training programs of

providing qualified skilled craftsmen for future needs is not met.

All concur, except Doerr, J., who dissents and votes to declare Ordinance 82-450 invalid, in accordance with the following memorandum.

Doerr, J. (dissenting). I respectfully dissent. In my view, the ordinance, which grants a preference to bidders having apprenticeship training programs, impermissibly impinges upon New York's competitive bidding statute for municipalities (General Municipal Law § 103).

The purpose behind the competitive bidding statute is set forth in General Municipal Law § 100-a, providing that the article dealing with public contracts shall be construed "so as to assure the prudent and economical use of public moneys for the benefit of all the inhabitants of the state and to facilitate the acquisition of facilities and commodities of maximum quality at the lowest possible cost." The statute has consistently been held to serve a two-fold purpose: to guard against favoritism and to permit the municipality to obtain the best work at the lowest price (*Jered Contr. Corp. v New York City Tr. Auth.,* 22 NY2d 187, 193; *Albion Indus. Center v Town of Albion,* 62 AD2d 478, *lv denied* 45 NY2d 710; *Le Cesse Bros. Contr. v Town Bd.,* 62 AD2d 28, 31, *affd* 46 NY2d 960; *American Inst. v Office of Gen. Servs.,* 47 AD2d 118, 119, *affd* 38 NY2d 991; *American Inst. v County of Erie,* 32 AD2d 231, 232).

Previous cases have held that the dual purposes of the statute may not be impaired by attempting to accomplish other, albeit desirable, purposes. Thus, for example, we declared invalid an ordinance providing that bid specifications must require domestic rather than imported steel (*American Inst. v County of Erie, supra; see also, American Inst. v Office of Gen. Servs., supra*). We have, likewise, noted that bid specifications may not require products to be produced within the county (*Matter of Warren Bros. Co. v Craner,* 30 AD2d 437, 439-440). As we noted in the *Steel* case, there "may be excellent reasons" for requiring domestic steel, but a municipal body may not "intrude into this area of mandated competitive bidding" (*American Inst. v County of Erie, supra,* p 233). The Rochester city ordinance herein, despite its benevolent purpose, similarly conflicts with the competitive bidding scheme mandated by the State Legislature.

Despite the apparent conflict, we upheld the ordinance when the case was first argued. We relied on a line of cases

holding that supplements mandated by the Labor Law must be provided in kind (*Matter of Action Elec. Contrs. Co. v Goldin,* 102 AD2d 732; *Matter of Lancaster Dev. v Ross,* 82 AD2d 1013; *Pilot Mechanical Corp. v Carroll,* 94 Misc 2d 437). Since apprenticeship training was, in our view, already required by statute, we found the ordinance in question to be essentially superfluous (*Matter of Skyway Roofing v County of Rensselaer,* 79 AD2d 1078).

Subsequent to our decision, however, the Court of Appeals reversed one of the cases relied on by us (*Matter of Action Elec. Contrs. Co. v Goldin,* 64 NY2d 213), holding that the duty to provide Labor Law supplements (of which apprenticeship training is one) may be satisfied by providing cash equivalents. In the instant case, for example, the contractor could satisfy its duty by paying novice workers journeyman wages instead of giving them apprenticeship training. The court reasoned that the goal of Labor Law § 220 was not to benefit workers, but to put union and nonunion contractors on an equal footing (*Matter of Action Elec. Contrs Co. v Goldin, supra,* pp 221-222). As long as an employer pays the cash equivalent of a supplement as determined by the Commissioner of Labor, section 220 is satisfied.

In view of the Court of Appeals holding, the ordinance herein must be deemed in conflict with the competitive bidding statute. In view of the decision in *Action Elec. (supra),* it can no longer be said that there is a statutory duty to provide apprenticeship training. Despite the strong statement of public policy pertaining to apprenticeship training (Labor Law § 810), such training is voluntary and not mandated by Labor Law § 220. The statute merely limits the conditions under which an employer may pay apprenticeship wages on a public works project. "Apprentices will be permitted to work as such only when they are registered, individually, under a bona fide program registered with the New York State Department of Labor * * * Any employee listed on a payroll at an apprentice wage rate, who is not registered as above, shall be paid the wage rate determined by the New York State Department of Labor for the classification of work he actually performed" (Labor Law § 220 [3-e]). Simply put, a novice not registered in an apprenticeship program must be paid journeyman wages. Moreover, the Commissioner's printout contained in the record sets forth a cash equivalent for each type of supplement, including apprenticeship training. Thus, I do not share with the majority the view that there is no viable equivalent substitute payment for apprenticeship training.

To sum up, the Labor Law encourages but does not require apprenticeship training; the General Municipal Law, however, demands that contracts be awarded to the lowest responsible bidder, and the municipality may not thwart that objective, even if it acts out of good intentions. (Reargument of appeal from judgment of Supreme Court, Monroe County, Conway, J. —declaratory judgment.) Present—Hancock, Jr., J. P., Callahan, Doerr and Green, JJ.