**GENERAL ELECTRIC COMPANY,**
Plaintiff–Appellant,

v.

**NEW YORK STATE DEPARTMENT OF LABOR; Thomas P. Hartnett, Industrial Commissioner of the State of New York; Charles Drobner, Director of Public Works, New York State Department of Labor; Robert Abrams, Attorney General of the State of New York, Defendants–Appellees.**

**No. 899, Docket 88–7922.**

United States Court of Appeals, Second Circuit.

Argued March 10, 1989.

Decided Nov. 29, 1989.

James S. Frank, New York City (Virgil B. Day, Loraine M. Cortese–Costa, Marc S. Wenger, Vedder, Price, Kaufman,

Kammholz & Day, New York City, of counsel), for plaintiff-appellant.

Jane Lauer Barker, Asst. Atty. Gen. In Charge of Labor Bureau, New York City (Robert Abrams, Atty. Gen., of the State of New York, O. Peter Sherwood, Sol. Gen., Richard S. Corenthal and M. Patricia Smith, Asst. Attys. Gen., New York City, of counsel), for defendants-appellees.

Edward J. Groarke and Richard L. O'Hara, Mineola, N.Y. (Colleran, O'Hara & Mills, Mineola, N.Y., of counsel), for amicus curiae, New York State, AFL–CIO and New York State Building and Construction Trades Council.

Before VAN GRAAFEILAND, CARDAMONE and PRATT, Circuit Judges.

VAN GRAAFEILAND, Circuit Judge:

General Electric Company appeals from an order of the United States District Court for the Southern District of New York (Carter, J.) denying its motion for preliminary injunctive relief against the enforcement of section 220 of New York's Labor Law. 698 F.Supp. 1093 (1988). As a general rule, we do not disturb a district court's discretionary denial of a preliminary injunction, particularly where the plaintiff has not made a showing of irreparable harm or a balance of hardships tipping sharply in its favor. *See Pride v. Community School Board of Brooklyn,* 482 F.2d 257, 264 (2d Cir.1973). However, in the instant case the parties agreed that only legal questions were involved and that no factual issues were presented. Accordingly, if we conclude that the district court's denial of plaintiff's motion for preliminary relief was based upon a misinterpretation of law that is basic to the issue of liability and may set a wrongful precedent, we have the power, and perhaps even the duty, to say so. *See Ring v. Spina,* 148 F.2d 647, 650 (2d Cir.1945); *Nevill v. Shell Oil Co.,* 835 F.2d 209, 211 (9th Cir.1987); 11 Wright & Miller, *Federal Practice and Procedure* § 2962 at 636–37 (1973). We hold that, as that portion of section 220 dealing with "supplements" is applied to employers in the position of appellant, it is preempted by section 514(a) of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001, *et seq.* Because the district court held to the contrary, we vacate the district court's order and remand for reconsideration of plaintiff's motion in the light of the proper legal principles.

As stated above, there is little or no dispute as to the facts. General Electric Company has a corporate "sub-entity" known as the New York Service Center (hereafter "GE") whose principal place of business is in North Bergen, New Jersey. GE is a party to a collective bargaining agreement with Local 3 of the International Brotherhood of Electrical Workers. The contract provides for a number of nationally administered ERISA plans covering such things as pensions, disability, medical assistance and job and income security. The nature and scope of fringe benefits such as these are the result of collective bargaining and vary, of course, as between employers and also as between unions. However, insofar as the GE–Local 3 contract is concerned, the intent of the signatories, attested to by the undisputed sworn statement of GE's Manager of Employee Relations, was to have the incorporated supplemental benefits apply as equally as possible to all employees, regardless of the state or locality in which the employees might be working.

Since January 1987, a group of GE employees has been doing transformer maintenance and repair work for the Long Island Railroad in Kings, Queens, Nassau and Suffolk Counties pursuant to a public works contract. Section 220(3) of the New York Labor Law provides in substance that the wage rate on a public works contract shall be not less than the prevailing rate paid in the locality to the majority of workers in the same trade or occupation. Section 220(5)(a) defines prevailing wage rate as that which is paid in the locality by virtue of collective bargaining agreements between bona fide labor organizations and private employers who employ at least 30 percent of the workers in the same trade in the same locality.

Section 220(3) requires that "supplements" also be provided in accordance with local prevailing practices. Section 220(5)(b) defines "supplements" as "all remuneration for employment paid in any medium other than cash, or reimbursement for expenses, or any payments which are not 'wages' within the meaning of the law, including, but not limited to, health, welfare, nonoccupational disability, retirement, vacation benefits, holiday pay and life insurance." Section 220(5)(c) provides in substance that the prevailing practice for supplements shall be determined in the same manner as the prevailing wage rate is determined.

The district court found that the supplements provided by GE were "different from, and in some cases less than those which the state claims are due under Section 220." In each instance where the cost of a supplement provided for in the GE–Local 3 contract did not correspond with the cost of a similar prevailing local benefit, section 220 required GE either to bring the cost of its prescribed benefit into equivalence with the cost of the local prevailing one or to pay the additional cost directly to the employee-beneficiaries. *Action Electrical Contractors Co. v. Goldin*, 64 N.Y.2d 213, 218, 485 N.Y.S.2d 241, 474 N.E.2d 601 (1984). GE was not permitted to substitute one form of supplement for another. In the words of the Appellate Division Fourth Department, "the statute indicates that the Legislature intended that the Commissioner of Labor, not the contractor, determine the supplements to be provided and that the employee receive either the listed benefits or equivalent cash (or a combination of both)." *A.L. Blades & Sons, Inc. v. Roberts*, 136 A.D.2d 926, 927, 524 N.Y.S.2d 912 (mem.), *leave to appeal denied*, 72 N.Y.2d 803, 532 N.Y.S.2d 368, 528 N.E.2d 520 (1988). As the district court found, "GE received no credit under the statute for its cost of providing benefits which were not deemed to be 'prevailing benefits' by the Commissioner." The Commissioner simply computed what he deemed to be GE's cost of providing supplements that would meet prevailing local practices and notified the Railroad to withhold $241,117 in payments owed GE, which, according to the Commissioner, represented the cost of effecting compliance plus interest and penalties.

GE then moved in the district court for a preliminary injunction restraining the State from enforcing the notice, from prosecuting any proceeding against GE for the violations alleged in the notice and from enforcing any of the provisions of section 220 pending a prior hearing. GE's arguments in support of this motion, which it continues to urge in this Court, are that New York's attempt to regulate GE's payment of supplemental benefits has been preempted by both the National Labor Relations Act, 29 U.S.C. § 151, *et seq.*, and ERISA. GE also argues in this Court that the manner in which wage and supplement rates are established under section 220, *i.e.*, by reference to other privately negotiated labor agreements, constitutes an unconstitutional delegation of legislative power. However, the district court did not understand that it was being asked to pass on this question and did not do so. Although we have on occasion considered contentions not raised in the district court where they involved only questions of law, *e.g.*, *Foster v. United States*, 329 F.2d 717, 718 (2d Cir.1964), we think it better that the unconstitutional delegation argument be directed to the district court in the first instance on the remand we now direct.

Insofar as the relationship between section 220 and the NLRA is concerned, we agree with the district court that the State statute has not been preempted by the federal. *See Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 20, 107 S.Ct. 2211, 2222, 96 L.Ed.2d 1 (1987) ("[T]he NLRA is concerned with ensuring an equitable bargaining process, not with the substantive terms that may emerge from such bargaining."); *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 755, 105 S.Ct. 2380, 2397, 85 L.Ed.2d 728 (1985) ("Minimum state labor standards affect union and nonunion employees equally, and neither encourage nor discourage the collective-bargaining processes that are the subject of the NLRA."); *cf. Golden State Transit*

*Corp. v. City of Los Angeles*, 475 U.S. 608, 619, 106 S.Ct. 1395, 1401, 89 L.Ed.2d 616 (1986) (" 'Free collective bargaining is the cornerstone of the structure of labor-management relations carefully designed by Congress when it enacted the NLRA'.... Even though agreement is sometimes impossible, government may not step in and become a party to the negotiations.").

The issue of ERISA preemption is a different matter. Section 514(a) of ERISA provides in substance that the statute supersedes all State laws insofar as they "relate to" any employee benefit plan covered by the Act. In denying the existence of such relationship in the instant case, the district court adopted the reasoning of District Judge Sand in *Rondout Electric, Inc. v. New York State Dep't of Labor*, 84 Civ. 3095 (S.D.N.Y.1984), to the effect that section 220 does not "do anything other than consider the value to the employee of contributions to [ERISA] as compared to the value of contributions made to similar plans by other employers in the industry and locality." This is not a correct statement of what section 220 does. The section originally was designed to insure that employees on public works were paid wages equivalent to the prevailing rate of similarly employed workers in the locality. *Smith v. Joseph*, 275 A.D. 201, 203, 88 N.Y.S.2d 818 *aff'd*, 300 N.Y. 516, 89 N.E.2d 248 (1949). Because the statute made no reference to fringe benefits, bidders on public works contracts who provided no such benefits were in a position to underbid those who did. Accordingly, section 220 was amended in 1956 to require that all bidders on public works contracts assume the cost of prevailing fringe benefits in the locality, thus presumably putting all bidders on an even footing.[1] *Action Electrical Contractors Co. v. Goldin, supra*, 64 N.Y.2d at 221–22, 485 N.Y.S.2d 241, 474 N.E.2d 601. Section 220 measures supplements by their cost to the employer, not

their "value to the employee." The employer may satisfy his statutory obligation by giving his employees the cash cost rather than the benefit:

> Under subdivision 3 of section 220 of the Labor Law, supplemental fringe benefits must be provided to such employees "in accordance with the prevailing practices in the same trade or occupation in the locality within the state" where the public work is located. This requirement will be fulfilled when employees are supplied with the cash equivalent of the cost of obtaining the prevailing benefits or by providing an equivalent benefits plan, or by a combination of benefits and cash equal to the cost of the prevailing benefits.

*Action Electrical Contractors Co. v. Goldin, supra*, 64 N.Y.2d at 218, 485 N.Y.S.2d 241, 474 N.E.2d 601.

The Supreme Court holds that under ERISA, "private parties, not the Government, control the level of benefits." *Alessi v. Raybestos–Manhattan, Inc.*, 451 U.S. 504, 511, 101 S.Ct. 1895, 1900, 68 L.Ed.2d 402 (1981). The New York courts hold that under section 220, "the Commissioner of Labor, not the contractor, determine[s] the supplements to be provided." *A.L. Blades & Sons, Inc. v. Roberts, supra*, 136 A.D.2d at 927, 524 N.Y.S.2d 912. These courts are adjudicating in the same area but reaching inconsistent results, and that is exactly what ERISA was designed to prevent. *See* statements of Senator Williams and Congressman Dent quoted in *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 46, 107 S.Ct. 1549, 1552, 95 L.Ed.2d 39 (1987), and *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 99, 103 S.Ct. 2890, 2901, 77 L.Ed.2d 490 (1983).

As stated above, the GE–Local 3 bargaining agreement was designed to be applied uniformly to all employees in the bargaining unit regardless of their working location. This is what Congress hoped to accomplish when it enacted ERISA. *Local Union 598, Plumbers & Pipefitters Indus.*

---

**1.** Because section 220 requires ex-locality employers to incur the cost of all locally prevailing supplements, while at the same time the statute denies them credit for non-prevailing pension and welfare benefits they are required by their

collective bargaining agreements to provide, ex-locality employers in a situation such as this may be placed at a financial disadvantage in bidding.

Journeymen & Apprentices Training Fund v. J.A. Jones Constr. Co., 846 F.2d 1213, 1220 (9th Cir.), aff'd sum., —— U.S. ——, 109 S.Ct. 210, 102 L.Ed.2d 202 (1988); Gilbert v. Burlington Indus., Inc., 765 F.2d 320, 327 (2d Cir.1985), aff'd sum., 477 U.S. 901, 106 S.Ct. 3267, 91 L.Ed.2d 558 (1986). At the present time, there is not even unity as between Nassau/Suffolk Counties on the one hand and Kings/Queens Counties on the other. Moreover, GE cannot eliminate the differences by single cash payments, as in Fort Halifax Packing Co. v. Coyne, supra, 482 U.S. at 12, 107 S.Ct. at 2218; Martori Bros. Distributors v. James–Massengale, 781 F.2d 1349, 1358 (9th Cir.), cert. denied, 479 U.S. 949, 107 S.Ct. 435, 93 L.Ed.2d 385 (1986); it is required to make continuous calculations, adjustments and payments.

Section 514(a) of ERISA was intended to have a "sweeping preemptive effect in the employee benefit plan field." American Progressive Life and Health Ins. Co. v. Corcoran, 715 F.2d 784, 786 (2d Cir.1983). Congress intended ERISA to occupy and regulate the field of employee benefit plans. Delta Air Lines, Inc. v. Kramarsky, 650 F.2d 1287, 1303 (2d Cir.1981), modified on other grounds sub nom. Shaw v. Delta Air Lines, supra, 463 U.S. 85, 103 S.Ct. 2890; Dependahl v. Falstaff Brewing Corp., 653 F.2d 1208, 1215 (8th Cir.), cert. denied, 454 U.S. 968, 102 S.Ct. 512, 70 L.Ed.2d 384 (1981). It sought to "preempt all state laws that relate to employee benefit plans and not just state laws which purport to regulate an area expressly covered by ERISA." Wadsworth v. Whaland, 562 F.2d 70, 77 (1st Cir.1977), cert. denied, 435 U.S. 980, 98 S.Ct. 1630, 56 L.Ed.2d 72 (1978); see Pervel Indus., Inc. v. State of Connecticut Comm'n on Human Rights and Opportunities, 468 F.Supp. 490 (D.Conn.1978), aff'd, 603 F.2d 214 (2d Cir. 1979), cert. denied, 444 U.S. 1031, 100 S.Ct. 701, 62 L.Ed.2d 667 (1980); Landro v. Glendenning Motorways, Inc., 625 F.2d 1344, 1351 (8th Cir.1980).

A state law "relates to" employee benefit plans when it has "connection with or reference to" such plans, Gilbert v. Bur-lington Indus., Inc., supra, 765 F.2d at 327 (quoting Shaw v. Delta Air Lines, supra, 463 U.S. at 97, 103 S.Ct. at 2900), "whenever it 'purports to regulate, directly or indirectly, the terms and conditions of employee benefit plans.' 29 U.S.C. § 1144(c)(2) (1976)." Stone & Webster Engineering Corp. v. Ilsley, 690 F.2d 323, 329 (2d Cir.1982), aff'd sum. sub nom. Arcudi v. Stone & Webster Engineering Corp., 463 U.S. 1220, 103 S.Ct. 3564, 77 L.Ed.2d 1405 (1983). Such connection exists where a state statute prescribes either the type and amount of an employer's contributions to a plan, Local Union 598 v. J.A. Jones Constr. Co., supra, 846 F.2d at 1219; Stone & Webster Engineering Corp., supra, 690 F.2d at 329; the rules and regulations under which the plan operates, Hewlett–Packard Co. v. Barnes, 425 F.Supp. 1294, 1297–1300 (N.D.Cal.1977), aff'd, 571 F.2d 502 (9th Cir.) (per curiam), cert. denied, 439 U.S. 831, 99 S.Ct. 108, 58 L.Ed.2d 125 (1978); or the nature and amount of the benefits provided thereunder, Standard Oil Co. v. Agsalud, 442 F.Supp. 695, 706–07 (N.D.Cal.1977), aff'd, 633 F.2d 760 (9th Cir.1980), aff'd sum., 454 U.S. 801, 102 S.Ct. 79, 70 L.Ed.2d 75 (1981). Section 220 intrudes into all three of these preempted areas. Ex-locality employers such as GE are required either to bring their pension and welfare plans into conformity with those prevailing in the locality (as the prevailing plans are determined to exist by a State fiscal officer on the basis of job classifications made by the Department of Labor) or to make up the difference through cash payments to their employees. The employer is required to keep, and on request to file with the State, sworn schedules of supplements and wages and to make its books and records pertaining to wages, supplements and hours of labor available for inspection by a State fiscal officer. In the event the employer fails to bring a plan into conformity with a similar plan prevailing in the locality, the employee may be required to accept cash payments based on what the employer's cost would have been to accomplish conformity, Action Electrical Contractors Co. v. Goldin, supra, 64 N.Y.2d at 218, 222, 485 N.Y.S.2d

241, 474 N.E.2d 601 payments that may be of lesser value to the employee than the unpaid benefits would have been. In sum, we conclude that the above-described provisions of section 220 clearly relate to the ERISA plans of ex-locality employers and are preempted by the federal statute.

We therefore vacate the district court's order denying GE's motion for a preliminary injunction and remand the matter to the district court for reconsideration of GE's motion in the light of the law as we have defined it herein. At the same time the district court may consider GE's due process argument based on the procedure followed in determining what constitutes prevailing supplements.

GEORGE C. PRATT, Circuit Judge, dissenting:

Federal preemption under ERISA does not sweep so broadly that it invalidates a state law governing labor costs that neither purports to regulate employee benefits plans nor affects, directly or indirectly, a plan's primary administrative functions. Because the majority both overstates the impact of New York's prevailing wage law and breaks stride with our prior decisions in this area, I respectfully dissent from the majority's opinion insofar as it holds that § 220 is preempted by ERISA.

In our latest and perhaps most thorough discussion of ERISA preemption, we compared the types of laws that have been struck down under § 514 with those that have withstood preemption challenge. *See Aetna Life Ins. Co. v. Borges*, 869 F.2d 142, 145–47 (2d Cir.), *cert. denied*, — U.S. ——, 110 S.Ct. 57, 107 L.Ed.2d 25 (1989). We found the types of statutes that have been held preempted were "those that provide an alternative cause of action to employees to collect benefits protected by ERISA, refer specifically to ERISA plans and apply solely to them, or interfere with the calculation of benefits owed to an employee." The types of statutes that have survived preemption analysis were typically laws of general application, "often traditional exercises of state power or regulatory authority", whose economic and ad-

ministrative effects on benefits plans were incidental to their primary objectives. *Id.* at 146. Generalizing from these cases, we concluded that "[w]hat triggers ERISA preemption is not just any indirect effect on administrative procedures but rather an effect on the primary administrative functions of benefits plans, such as determining an employee's eligibility for a benefit and the amount of that benefit." *Id.* at 146–47.

New York's prevailing wage law does none of these things. It does not interfere with any of the primary administrative functions of ERISA plans; it does not affect the structure or administration of benefits plans; it does not determine an employee's eligibility for benefits; nor does it control the type or level of benefits provided. Rather, the law seeks to equalize the minimum labor costs for employers bidding on public works contracts. It accomplishes this goal, in part, by requiring contractors to give their employees the cash equivalent of what it would cost them to provide the wage "supplements" (that is all fringe benefits, regardless of whether they are covered by ERISA) prevailing in the locality where the work is to be performed. *Action Elec. Contractors Co. v. Goldin*, 64 N.Y.2d 213, 485 N.Y.S.2d 241, 474 N.E.2d 601 (1984). If it chooses, a contractor may instead provide a combination of cash and benefits, or simply benefits alone, but nothing in the law forces employers to take either of these options; indeed, considerations of efficiency would encourage most employers to provide the cash payments rather than alter their benefits plans.

Regulation of labor costs in public works projects is surely a valid exercise of the state's traditional regulatory authority. As we have previously emphasized, where a law claimed to be superseded by ERISA "is an exercise of a State's police powers," the law should not be held preempted "unless this conclusion is unavoidable." *Rebaldo v. Cuomo*, 749 F.2d 133, 138 (2d Cir.1984), *cert. denied*, 472 U.S. 1008, 105 S.Ct. 2702, 86 L.Ed.2d 718 (1985). While preemption may be an unavoidable conclusion where a state law explicitly singles out ERISA plans for different treatment, *see Mackey v. Lanier Collections Agency*, 486

U.S. 825, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988), or directly alters the calculation or payment of benefits under ERISA-covered pension plans, *see Alessi v. Raybestos–Manhattan, Inc.*, 451 U.S. 504, 101 S.Ct. 1895, 68 L.Ed.2d 402 (1981); *Stone & Webster Engineering Corp. v. Ilsley*, 690 F.2d 323 (2d Cir.1982), *aff'd mem.*, 463 U.S. 1220, 103 S.Ct. 3564, 77 L.Ed.2d 1405 (1983), or creates a cause of action to enforce a right granted by ERISA, *see Gilbert v. Burlington Indus., Inc.*, 765 F.2d 320 (2d Cir.1985), *aff'd mem.*, 477 U.S. 901, 106 S.Ct. 3267, 91 L.Ed.2d 558 (1986), no such problem is presented by the statute before us. The fact that employers may choose to comply with the law by providing a different benefits plan or a combination of benefits and cash rather than by simply paying the additional costs as wages, does not render the statute preempted. *See Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 108, 103 S.Ct. 2890, 2905, 77 L.Ed.2d 490 (1983) (while a state may not require employers to alter their ERISA plans, it is not preempted from giving them that option as a means of complying with state law).

The incidental administrative burdens this law places on benefits plans are comparable to, and certainly no worse than, the burdens involved in *Rebaldo* and *Aetna Life*. The state statute in *Rebaldo* prescribed what hospitals could charge for inpatient care, thus precluding ERISA plans from negotiating their own discount rates with hospitals and forcing the plans to operate differently and more expensively in that state. In *Aetna Life*, compliance with a state escheat law required ERISA plans to undertake record-keeping and other administrative duties different from its responsibilities in other states. In both cases, compliance with the state law had both an administrative and an economic impact on ERISA plans, but in neither case did we conclude that such effects required preemption.

Similarly, New York's prevailing wage law requires an employer to satisfy certain administrative responsibilities, such as making its books and records available for inspection. As in *Rebaldo* and *Aetna Life*, these requirements may make an employer's benefits plan somewhat more expensive to operate. Yet these requirements are merely incidental to the law's primary goal of equalizing the labor costs of local and ex-locality contractors, and they impose no greater expense or burden than the laws upheld in *Rebaldo* and *Aetna Life*. Indeed, we expressly noted in *Rebaldo* that the very type of law at issue here—a state law governing labor costs—was not the sort of statute that congress intended to preempt, despite its impact on the cost and administration of pension plans. 749 F.2d at 138 (ERISA does not preempt "State labor laws that govern working conditions and labor costs" even though compliance with such laws may increase the cost of operating benefits plans); *accord Aetna Life*, 869 F.2d at 145.

The majority does not attempt to distinguish *Rebaldo* or *Aetna Life*, nor, in my view, could it sensibly do so. Like the statutes we upheld in those decisions, New York's prevailing wage statute is a law of general application whose tangential effects on employee benefits plans are negligible and wholly incidental to the law's primary purpose. Since the majority opinion departs from the wise path charted by our prior decisions, I dissent. New York's prevailing wage law is not preempted by ERISA, and the order of the district court should be affirmed.