■ In the Matter of TAP ELECTRICAL CONTRACTING SERVICE, INC., Petitioner, v THOMAS F. HARTNETT, as Commissioner of Labor of the State of New York, Respondent. [616 NYS2d 86] — Proceeding pursuant to CPLR article 78 to review a final order and determination of the Commissioner of Labor of the State of New York, dated February 6, 1991, made upon remittitur from an order and decision of this Court dated December 22, 1989 (see, Matter of Tap Elec. Contr. Serv. v Hartnett, 156 AD2d 612, mod 76 NY2d 164), which modified a prior order and determination of the Commissioner of Labor dated October 31, 1989, by revising the amounts of underpayments reflecting wage supplements not covered by the Employee Retirement Income Security Act of 1974 (29 USC § 1001 et seq.), which the petitioner had failed to pay to or on behalf of 28 employees, in willful violation of Labor Law article 8.

Adjudged that the petition is granted, on the law, without costs or disbursements, to the extent of annulling the first, second, and third decretal paragraphs of the final order and determination dated February 6, 1991, the petition is denied in all other respects and the final order and determination dated February 6, 1991, is confirmed to the extent that it affirmed the order and determination dated October 31, 1989, insofar as modified by the decision and order of this Court dated December 22, 1989 (see, Matter of Tap Elec. Contr. Serv. v Hartnett, 156 AD2d 612, mod 76 NY2d 164, supra).

In January 1985 the petitioner entered into a contract with the New York State Department of Transportation to replace lighting on a 12.75-mile section of the Northern State Parkway. The project was funded by the Federal and State Governments. Pursuant to Labor Law § 220, the State's prevailing wage law, the petitioner provided supplements to its workers through a combination of benefits and lump sum cash payments. Four of the supplement plans were covered and governed by the Employee Retirement Income Security Act of 1974 (29 USC § 1001 et seq.) (hereinafter the ERISA supplements). Three other supplements, specifically, vacation and holiday pay, supplemental unemployment benefits, and benefit fund supplements, were non-ERISA supplements (hereinafter the non-ERISA supplements). Furthermore, in order to comply with the applicable prevailing wage-rate schedules, the petitioner was required to pay additional amounts towards both the ERISA and the non-ERISA supplements. This the peti-

tioner did through weekly cash payments directly to its employees (hereinafter the weekly cash payments).

As a result of an investigation by the New York State Department of Labor, the petitioner was charged, *inter alia,* with willfully violating Labor Law § 220 by (1) underpaying prevailing wages and supplements to three individuals whom the petitioner had erroneously classified as "trainees"; (2) failing to pay prevailing supplements to or on behalf of 28 other employees; and (3) employing an excessive number of apprentices in violation of the applicable apprentice ratio as required by the prevailing wage schedule in the contract. In an order and determination dated October 31, 1989, the Commissioner of the Department of Labor (hereinafter the Commissioner) determined that the petitioner had willfully violated Labor Law § 220 with respect to all of the above allegations. Since this was the petitioner's second final determination of a willful violation of the prevailing wage law within a six-year period, the petitioner was barred from bidding on any public work contract for five years.

The petitioner commenced a CPLR article 78 proceeding in this Court for review of the Commissioner's determination, arguing, *inter alia,* that Labor Law § 220 was preempted by ERISA. In accordance with *General Elec. Co. v New York State Dept. of Labor* (891 F2d 25, *cert denied* 496 US 912), this Court concurred that ERISA preempted the Commissioner's determination insofar as it related to petitioner's ERISA supplements, and the matter was remitted to the Commissioner to calculate the amount by which petitioner had underpaid the non-ERISA supplements *(see, Matter of Tap Elec. Contr. Serv. v Hartnett, supra).*

In recalculating the amount of the petitioner's non-ERISA supplement underpayments, rather than applying the full amount of the weekly cash payments to the non-ERISA supplements, the Commissioner apportioned those payments between the ERISA supplements and the non-ERISA supplements. He did so according to the manner in which the petitioner had originally intended to allocate its payments to the supplements (i.e., if, when the weekly cash payments were made, the petitioner intended that 50% of the payments were to cover non-ERISA supplements; then, when recalculating the amount of the non-ERISA underpayments, the Commissioner credited only 50% of the payments to non-ERISA supplements).

In an order and determination dated February 6, 1991, the

Commissioner again concluded that the petitioner had willfully underpaid the non-ERISA supplements, but by an amount less than previously determined. Thus, he modified his October 1989 order and determination to reflect this, but otherwise affirmed that order, particularly as it related to determining that the petitioner had underpaid prevailing wages and supplements to the three employees petitioner had erroneously classified as "trainees", and barring the petitioner from bidding on public work projects until November 1994. The petitioner subsequently commenced this second CPLR article 78 proceeding to review the Commissioner's February 1991 order claiming, *inter alia,* that because the order applied a portion of the weekly cash payments to ERISA supplements, the order "related to" and, therefore, was preempted by, ERISA.

It is well settled that ERISA was "designed to have a sweeping preemptive effect in the employee benefit plan field" *(American Progressive Life & Health Ins. Co. v Corcoran,* 715 F2d 784, 786; *see,* 29 USC § 1144 [a]; *Ingersoll-Rand Co. v McClendon,* 498 US 133), and that all State laws that relate to employee benefit plans are preempted *(see, General Elec. Co. v New York State Dept. of Labor,* 891 F2d 25, 29, *supra).* Before addressing the issue of whether the Commissioner's order "relates to" and, therefore, is preempted by, ERISA, we note that the order constitutes a "State law" within the meaning of ERISA *(see,* 29 USC § 1144 [c] [1]; *National El. Indus. v Calhoon,* 957 F2d 1555, 1557-1558, *cert denied* — US —, 113 S Ct 406).

The Supreme Court has "repeatedly stated that a law 'relates to' a covered employee benefit plan for purposes of [ERISA] § 514 (a) 'if it has a connection with or reference to such a plan' " *(District of Columbia v Greater Wash. Bd. of Trade,* 506 US —, —, 113 S Ct 580, 583, quoting *Shaw v Delta Air Lines,* 463 US 85, 97; *see, Ingersoll-Rand Co. v McClendon, supra,* at 139). ERISA's preemption clause is " 'conspicuous for its breadth' " *(Ingersoll-Rand Co. v McClendon, supra,* at 138, quoting *FMC Corp. v Holliday,* 498 US 52, 58). "What triggers ERISA preemption is * * * an effect on the primary administrative function of benefit plans, such as determining an employee's eligibility for a benefit and the amount of that benefit" *(Aetna Life Ins. Co. v Borges,* 869 F2d 142, 146-147 [2d Cir], *cert denied* 493 US 811; *see, Monarch Cement Co. v Lone Star Indus.,* 982 F2d 1448, 1452 [10th Cir]). Among those laws that "relate to" ERISA plans are "laws that create reporting, disclosure, funding, or vesting requirements for ERISA plans"

and "laws that provide rules for the calculation of the amount of benefits to be paid under ERISA plans" *(Martori Bros. Distribs. v James-Massengale,* 781 F2d 1349, 1356-1357, *cert denied* 479 US 1018; *see, General Elec. Co. v New York State Dept. of Labor,* 891 F2d 25, 29, *supra).*

By applying a portion of the weekly cash payments to ERISA supplements in the present case, the Commissioner's February 1991 order determined the amount of an employee's benefit *(see, Aetna Life Ins. Co. v Borges, supra).* It also created a funding requirement and provided a rule for the calculation of the amount of benefits to be paid under the employees' ERISA plans *(see, Martori Bros. Distribs. v James-Massengale, supra; General Elec. Co. v New York State Dept. of Labor, supra).* By doing so, the Commissioner required Tap "either to bring [its ERISA supplements] into conformity with those prevailing in the locality * * * or to make up the difference through cash payments to [its] employees" in violation of ERISA *(General Elec. Co. v New York State Dept. of Labor,* 891 F2d 25, 29, *supra).* Thus, the Commissioner's February 1991 order is preempted by ERISA.

Since the petitioner's weekly cash payments could not be applied to ERISA supplements, it follows that they could be applied only to the non-ERISA supplements. Doing so, it is undisputed that no underpayment of the non-ERISA supplements results. Therefore, the matter need not be remitted to the Commissioner again *(see, Matter of Action Elec. Contrs. Co. v Goldin,* 64 NY2d 213, 223).

We confirm the Commissioner's order, however, insofar as it determined that the petitioner willfully violated Labor Law § 220 and barred the petitioner from bidding on or being awarded any public work contract until November 1994 since this was the second final determination of a willful violation by the petitioner within a period of six years *(see,* Labor Law § 220-b [3] [b]). As previously noted, one basis for the Commissioner's determination that the petitioner willfully violated Labor Law § 220 was that it underpaid prevailing wages and supplements to three individuals it classified as "trainees". Although we annulled this finding in our previous order *(see, Matter of Tap Elec. Contr. Serv. v Hartnett, supra,* at 615), the Court of Appeals reinstated this portion of the Commissioner's determination after concluding that Federal law does not preempt Labor Law § 220 in this regard and finding that the Commissioner's determination of the petitioner's willful violation of Labor Law § 220 on this basis was supported by substantial evidence in the record *(see, Matter of Tap Elec.*

*Contr. Serv. v Hartnett,* 76 NY2d 164, *supra).* Therefore, the doctrine of res judicata bars petitioner from relitigating this issue *(see, O'Brien v City of Syracuse,* 54 NY2d 353). Sullivan, J. P., Balletta, Copertino and Santucci, JJ., concur.