957 F.2d 1555
 123 Lab.Cas. P 57,164, 1 Wage & Hour Cas.2d (BNA) 98
 NATIONAL ELEVATOR INDUSTRY, INC., Plaintiff-Appellant,
v.
Dean H. CALHOON, as Commissioner of the Department of Labor
for the State of Oklahoma; the Department of
Labor for the State of Oklahoma,
Defendants-Appellees.
 No. 90-6236.
 United States Court of Appeals,
Tenth Circuit.
 Feb. 26, 1992.
 
 Charles O. Strahley of Crowe & Dunlevy, Oklahoma City, Okl. (Michael T. McGrath of Putney, Twombly, Hall & Hirson, New York City, with him on the briefs), for plaintiff-appellant.
 Rabindranath Ramana, Asst. Atty. Gen. of Oklahoma (Robert H. Henry, Atty. Gen. of Oklahoma, with him on the brief), Oklahoma City, Okl., for defendants-appellees.
 Before LOGAN, MOORE and ANDERSON, Circuit Judges.
 LOGAN, Circuit Judge.
 
 
 1
 Plaintiff National Elevator Industry, Inc. appeals from the dismissal of its complaint which sought to have a ruling of the Oklahoma Commissioner of Labor declared preempted by either the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 et seq., or the National Labor Relations Act (NLRA), 29 U.S.C. § 151 et seq., or both. Plaintiff seeks to overturn a ruling by defendant Oklahoma Commissioner of the Department of Labor under Oklahoma's prevailing wage law that an elevator constructor helper on state public works projects must be enrolled in a certified Bureau of Apprenticeship Training program in order to receive the rate of pay for apprentices and trainees rather than the rate of pay for mechanics. See Declaratory Ruling of the Labor Commissioner, Ruling 1-89 (Dec. 22, 1989), II R. ex. B; Okla.Stat. tit. 40, §§ 196.1, 196.2.9, 196.6.A. The district court dismissed the complaint on the motion of defendants, Department of Labor for the State of Oklahoma and its Commissioner. This court has jurisdiction over plaintiff's appeal pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1291.
 
 
 2
 * For many decades, the wages, hours and working conditions of mechanics and helpers employed in the elevator industry have been established by a series of nationwide collective bargaining agreements. These agreements provide for "teams"; each team consists of one mechanic and one helper. Helpers are workers who have not completed training under the National Elevator Industry Education Program (NEIEP) and passed a mechanics examination. Any helper may participate in this national training program in order to qualify as a mechanic, and many do. NEIEP is funded by employers based upon hours worked by all mechanics and helpers.
 
 
 3
 The wages for mechanics and helpers are calculated under the collectively bargained contract using a specific formula that utilizes variables from local geographical areas to determine the appropriate prevailing wage for a particular area. Helpers' wages are set at seventy percent of mechanics' wages. Despite plaintiff's collectively bargained agreement determining wages for helpers, defendants refuse to recognize the helper category for purposes of the Oklahoma prevailing wage law. Therefore, helpers working on State of Oklahoma public works projects must be paid at the mechanics' collectively bargained wage. Helpers on federal or private projects in Oklahoma continue to be paid at the helper's wage rate. Defendants, in the ruling under challenge here, would allow helpers to receive the lower wage rate for apprentices and trainees if the helpers' education program were approved by the federal Bureau of Apprenticeship Training (BAT). Plaintiff does not challenge the validity of the Oklahoma prevailing wage law itself but does contest defendants' construction of that law.
 
 II
 
 4
 Whether defendants' ruling is preempted by ERISA is a question of law subject to de novo review. Local Union 598, Plumbers & Pipefitters Indus. Journeymen & Apprentices Training Fund v. J.A. Jones Constr. Co., 846 F.2d 1213, 1218 (9th Cir.), aff'd mem., 488 U.S. 881, 109 S.Ct. 210, 102 L.Ed.2d 202 (1988); see Allis-Chalmers Credit Corp. v. Tri-State Equip., Inc. (In re Tri-State Equip., Inc.), 792 F.2d 967, 970 (10th Cir.1986) (questions of law are subject to de novo review).
 
 
 5
 ERISA contains a sweeping preemption provision that preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). In our analysis we are guided by Congress' clear intent and the Supreme Court's direction that ERISA preemption be construed broadly. See, e.g., Ingersoll-Rand Co. v. McClendon, --- U.S. ----, 111 S.Ct. 478, 482, 112 L.Ed.2d 474 (1990) (Congress intended expansive ERISA preemption); FMC Corp. v. Holliday, --- U.S. ----, 111 S.Ct. 403, 407, 112 L.Ed.2d 356 (1990) (ERISA "pre-emption clause is conspicuous for its breadth."); see also Straub v. Western Union Tel. Co., 851 F.2d 1262, 1263 (10th Cir.1988) (scope of ERISA preemption is very broad).
 
 
 6
 Section 1144(a) contains three requirements which must be satisfied before preemption will be found. There must be a state law, an employee benefit plan, and the state law must "relate to" the employee benefit plan.[1] If these three requirements are satisfied, then a court must consider whether any of the preemption exceptions under §§ 1003(b) or 1144(b), (d) apply.
 
 
 7
 First, we note that defendants' interpretive ruling is clearly "State law" for purposes of § 1144(a). Section 1144(c)(1) defines "State law" to include "all laws, decisions, rules, regulations, or other State action having the effect of law, of any State." 29 U.S.C. § 1144(c)(1); see also id. at (2) (defining term "State" to include any state agency).
 
 
 8
 Next, the district court found, and defendants on appeal agree, that NEIEP is an employee benefit plan under ERISA. We also agree that the helpers' training program, the NEIEP, is an employee benefit plan under ERISA. Section 1002(1) defines "employee welfare benefit plan" to mean:
 
 
 9
 any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services....
 
 
 10
 29 U.S.C. § 1002(1) (emphasis added); see also id. at (3) ("employee welfare benefit plan" is an "employee benefit plan"). NEIEP is a national training program administered by a board of trustees; it receives regular contributions from employers and exists for the exclusive benefit of employees. The clear language of the statute indicates that training programs, as distinct from apprenticeship programs, qualify as employee welfare benefit plans.
 
 
 11
 The more difficult issue in this case is whether the state law "relates to" the employee benefit plan. The Supreme Court noted in Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983), that "[a] law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." Id. at 96-97, 103 S.Ct. at 2899-900. Moreover, "relate to" should be read broadly. Id. at 98, 103 S.Ct. at 2899; see also Straub, 851 F.2d at 1264. Even broad construction, however, has limits; the Court in Shaw stated that "[s]ome state actions may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan." Shaw, 463 U.S. at 100 n. 21, 103 S.Ct. at 2901 n. 21. In recognition of this limitation articulated in Shaw, a number of courts have found state laws of general application with some limited effect on ERISA plans do not "relate to" the ERISA plans under § 1144(a). See, e.g., Aetna Life Ins. Co. v. Borges, 869 F.2d 142, 146-47 (2d Cir.) (upholding general escheat law that affected ERISA benefit plans), cert. denied, 493 U.S. 811, 110 S.Ct. 57, 107 L.Ed.2d 25 (1989); Firestone Tire & Rubber Co. v. Neusser, 810 F.2d 550, 556 (6th Cir.1987) (upholding general income tax that included employee contributions to ERISA plan); Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan Enters., Inc., 793 F.2d 1456, 1470 (5th Cir.1986) (finding no preemption of state law breach of fiduciary duty claims), cert. denied, 479 U.S. 1034, 107 S.Ct. 884, 93 L.Ed.2d 837 (1987); Rebaldo v. Cuomo, 749 F.2d 133, 140 (2d Cir.1984) (upholding statute regulating hospital rates that affected ERISA plans' ability to negotiate special rates), cert. denied, 472 U.S. 1008, 105 S.Ct. 2702, 86 L.Ed.2d 718 (1985).
 
 
 12
 There is no simple test for determining when a law "relates to" a plan. Borges, 869 F.2d at 145. The Ninth Circuit in Martori Bros. Distributors v. James-Massengale, 781 F.2d 1349 (9th Cir.), cert. denied, 479 U.S. 1018, 107 S.Ct. 670, 93 L.Ed.2d 722 (1986), recognized four types of laws that have been held to "relate to" ERISA plans. They are:
 
 
 13
 First, laws that regulate the type of benefits or terms of ERISA plans. Second, laws that create reporting, disclosure, funding, or vesting requirements for ERISA plans. Third, laws that provide rules for the calculation of the amount of benefits to be paid under ERISA plans. Fourth, laws and common-law rules that provide remedies for misconduct growing out of the administration of the ERISA plan.
 
 
 14
 Id. at 1356-57 (footnotes omitted); see also General Elec. Co. v. New York State Dep't of Labor, 891 F.2d 25, 29 (2d Cir.1989), cert. denied, 496 U.S. 912, 110 S.Ct. 2603, 110 L.Ed.2d 283 (1990). On the other hand, laws of general application--not specifically targeting ERISA plans--that involve traditional areas of state regulation and do not affect "relations among the principal ERISA entities--the employer, the plan, the plan fiduciaries, and the beneficiaries"--often are found not to "relate to" an ERISA plan. Firestone, 810 F.2d at 555-56 (quoting Sommers, 793 F.2d at 1467).
 
 
 15
 Defendants, in essence, argue that the prevailing wage law and the Commissioner's ruling are laws of general application, involving wage regulation--an area of traditional state regulation--that do not "relate to" the NEIEP. General application wage laws, although they incidentally may affect ERISA plans, are well within a state's traditional police powers and not preempted by ERISA. See Metropolitan Life Ins. Co. v. Massachusetts, 471 U.S. 724, 756, 105 S.Ct. 2380, 2397, 85 L.Ed.2d 728 (1985) (noting in NLRA context that states have broad authority to regulate wages and worker safety); Siuslaw Concrete Constr. Co. v. Washington, Dep't of Transp., 784 F.2d 952, 958 (9th Cir.1986) (upholding state minimum wage law); General Elec., 891 F.2d at 30 (Pratt, J., dissenting) (noting "[r]egulation of labor costs in public works projects is surely a valid exercise of the state's traditional regulatory authority"). Plaintiff conceded at oral argument that a state has the authority to impose a minimum wage on workers without ERISA preemption.
 
 
 16
 Our task is to determine whether the Oklahoma prevailing wage law as interpreted by defendants' ruling is indeed a law of general application with only incidental effect on NEIEP. Both parties cite a host of ERISA preemption cases in support of their respective positions. A number of these cases merit brief discussion. In Hydrostorage, Inc. v. Northern Cal. Boilermakers Local Joint Apprenticeship Committee, 891 F.2d 719 (9th Cir.1989), cert. denied, --- U.S. ----, 111 S.Ct. 72, 112 L.Ed.2d 46 (1990), under authority of a California law, a state agency order banned a contractor from bidding for public works contracts because, inter alia, the contractor had not applied for approval to train apprentices. Id. at 723. The agency sought to require the contractor to participate in an ERISA plan and make contributions to an ERISA plan. Id. at 730. The Ninth Circuit found ERISA preemption of the order. Id. at 732; see also Operating Engineers & Participating Employers Pre-Apprentice, Apprentice & Journeyman Affirmative Action Training Fund v. Weiss Bros. Constr., 221 Cal.App.3d 867, 270 Cal.Rptr. 786, 794 (1990) (finding ERISA preemption of a contract claim in connection with the same California law at issue in Hydrostorage), cert. denied, --- U.S. ----, 111 S.Ct. 1337, 113 L.Ed.2d 268 (1991).
 
 
 17
 The instant case has strong similarities to Hydrostorage. Defendants' interpretation of the prevailing wage law has the effect, and possibly the aim, of encouraging participation in a specific type of ERISA plan (BAT approved apprentice plans) while discouraging participation in a different type of ERISA plan (NEIEP). In Hydrostorage, however, the state mandated participation in and contribution to an ERISA benefit plan, while here defendants' actions encourage but do not mandate changes and participation in an ERISA plan.
 
 
 18
 In a second Ninth Circuit case, Electrical Joint Apprenticeship Comm. v. MacDonald, 949 F.2d 270 (9th Cir.1991), the court considered application of Nevada statutes that allowed apprentice/training wages to be paid only to workers in state approved apprenticeship programs. The plaintiff had a BAT approved ERISA apprenticeship program but was required to pay the regular prevailing wage to apprentices because their plan was not approved by the state. The Ninth Circuit found this application of the Nevada prevailing wage statutes to be preempted by ERISA. Id. at 275. MacDonald resembles the instant case because both cases involve states requiring higher wages for workers in ERISA training programs they do not approve of while allowing lower wages for workers in ERISA training programs of which they do approve.
 
 
 19
 The Second Circuit, in General Electric Co. v. New York State Department of Labor, 891 F.2d 25 (2d Cir.1989), cert. denied, 496 U.S. 912, 110 S.Ct. 2603, 110 L.Ed.2d 283 (1990), considered a state prevailing wage law that required employers bidding for state public works projects either to provide prevailing benefits or to pay the difference in cash to their employees. The court held that the law "related to" employee benefit plans. Id. at 29-30. Judge Pratt dissented arguing that the law "does not interfere with any of the primary administrative functions of ERISA plans; it does not affect the structure or administration of benefits plans; it does not determine an employee's eligibility for benefits; nor does it control the type or level of benefits provided," and therefore, preemption was not appropriate. Id. at 30 (Pratt, J., dissenting).
 
 
 20
 The facts and issues in General Electric are also somewhat like those in the present case. In General Electric employers were given a choice similar to that presented to plaintiff: either change the benefits of their ERISA plan to meet the state's specifications or pay workers more money. There are, however, important differences between General Electric and the instant case. In General Electric, under the option to pay more money, the amount due varied depending upon the level of ERISA benefits and therefore was inextricably linked to the ERISA plan. In the case before us, the prevailing wage level does not vary and is not tied to the value of the benefits provided under NEIEP.
 
 
 21
 The Eighth Circuit, in Boise Cascade Corp. v. Peterson, 939 F.2d 632 (8th Cir.1991), petition for cert. filed, No. 91-707 (U.S. Oct. 28, 1991), held that a state minimum jobsite ratio rule of apprentices to journeymen was preempted by ERISA even though worker safety is an area of traditional state regulation. Id. at 638. The court held that such a law directly affected and intended to regulate terms and conditions of an ERISA plan and therefore "related to" the plan. Id. Boise Cascade stands for the proposition that even rules of general application in an area of traditional state regulation are preempted if their effects upon an ERISA plan are direct and not tenuous.
 
 
 22
 A recent district court case also merits discussion. In Associated Builders & Contractors, Golden Gate Chapter Inc. v. Baca, 769 F.Supp. 1537 (N.D.Cal.1991), the court considered a prevailing wage law that imposed payment of per diem wages upon employers for certain public and private works projects. The amount of the per diem wages was dependent in part upon the monetary value of prevailing benefits. Id. at 1546. The court found ERISA preemption because the law imposed upon employers the administrative burden of calculating the value of benefits provided; anticipated either cash supplements or increased benefits; and discouraged ERISA benefits in amounts above the prevailing amounts because of a limit on the amount of benefits that could be subtracted in the per diem wage calculation. Id. at 1547.
 
 
 23
 All the above cases dealt with apprenticeship/training programs or wages or both, and all found preemption. Although the facts of the case before us differ in some specifics from these other cases, the principles articulated do support preemption in the present case. Although wage regulation is an area of traditional state regulation, when wage regulations uniquely affect ERISA plans and involve the state in imposing requirements upon such plans, preemption will be found.
 
 
 24
 To support their argument that wage regulation is not within ERISA preemption due to a wage exception defendants rely upon 29 C.F.R. § 2510.3-1(b), which states that the payment of wages does not give rise to an employee welfare benefit plan.[2] The reliance on this wage exception is misplaced. Section 2510.3-1(b) only applies in determining whether an employee welfare benefit plan exists. If payment of wages created an employee welfare benefit plan, all paid employees would be in an ERISA plan, and ERISA would govern all employment or labor law--a result Congress did not intend. Once NEIEP is determined to be an employee benefit plan, 29 C.F.R. § 2510.3-1(b) has no further application. Because NEIEP is undisputedly an ERISA employee benefit plan, the wage exception is irrelevant to our preemption analysis. Massachusetts v. Morash, 490 U.S. 107, 109 S.Ct. 1668, 104 L.Ed.2d 98 (1989), and Fort Halifax Packing Co., Inc. v. Coyne, 482 U.S. 1, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987), do not hold otherwise. These cases merely refuse to find that payment of various wages from general funds give rise to an employee benefit plan. See Morash, 490 U.S. at 120-21, 109 S.Ct. at 1675-76 (vacation pay policy is not an employee benefit plan); Fort Halifax, 482 U.S. at 12, 107 S.Ct. at 2218 (statute requiring severance pay does not create or relate to an employee benefit plan).
 
 
 25
 We accept, as a general proposition, the state's right to regulate wages. But a wage law that provides an option favoring certain ERISA plans and benefits (BAT approved plans) over other ERISA plans and benefits (NEIEP) is not a law of "general application" and may be used to effect change in the administration, structure and benefits of an ERISA plan. If a state is permitted to use a prevailing wage scheme to single out and favor certain ERISA plans over other ERISA plans, the potential for abuse is great--a state could avoid ERISA's preemption provision and covertly disturb or alter ERISA plans. We believe that defendants' ruling would discourage non-BAT approved ERISA training programs and encourage changes to NEIEP, a national employee benefit program. We hold that defendants' ruling applying the state's prevailing wage law does "relate to" an employee benefit plan because the ruling's effects on NEIEP are not "tenuous, remote, or peripheral." See Shaw, 463 U.S. at 100 n. 21, 103 S.Ct. at 2901 n. 21.
 
 III
 
 26
 Finally, we consider whether the general savings clause in 29 U.S.C. § 1144(d) saves defendants' ruling from preemption. The savings clause states: "Nothing in this subchapter shall be construed to alter, amend, modify, invalidate, impair, or supersede any law of the United States ... or any rule or regulation issued under any such law." 29 U.S.C. § 1144(d). Defendants argue that preempting their ruling would "impair" and "supercede" 29 U.S.C. § 50 and regulations created pursuant to it. See 29 C.F.R. §§ 29.1-.13, 30.1-.19.
 
 
 27
 The savings clause generally saves federal law. See 29 U.S.C. § 1144(d) ("any law of the United States") (emphasis added). The savings clause may also apply to some state laws in limited circumstances, but the Supreme Court has directed that it should not be applied expansively. Shaw, 463 U.S. at 104, 103 S.Ct. at 2903. In Shaw, the Court recognized that while the savings clause "may operate to exempt provisions of state laws upon which federal laws depend for their enforcement, the combination of Congress' enactment of an all-inclusive pre-emption provision and its enumeration of narrow, specific exceptions to that provision makes us reluctant to expand [§ 1144(d) ] into a more general saving clause." Id. In Shaw, the Court held that state laws that prohibited conduct unlawful under Title VII of the Civil Rights Act of 1964 were saved from preemption because Title VII relies upon state laws as part of its enforcement scheme. Id. at 102, 103 S.Ct. at 2902. The Court noted that Title VII has a provision expressly preserving nonconflicting state laws. Id. at 101, 103 S.Ct. at 2901. State laws prohibiting practices lawful under Title VII, however, are not saved by the savings clause. Id. at 103, 103 S.Ct. at 2903.
 
 
 28
 Section 50 does not depend upon states to enforce its provisions; in fact, there is nothing in § 50 for states to enforce.[3] Section 50 merely seeks to facilitate development of apprenticeship programs--it does not mandate apprenticeship programs or seek to discourage other training programs.[4] We agree with the Ninth Circuit that "the regulations relate only to eligibility for federal registration. Neither they nor the Act [§ 50] itself contemplate enforcement mechanisms...." Hydrostorage, 891 F.2d at 731 (citing and adopting the district court's analysis, 685 F.Supp. 718, 722 (N.D.Cal.1988)); see also MacDonald, 949 F.2d at 274 n. 3 (ERISA "does not permit independent state regulation" under § 50). Therefore, defendants' ruling simply cannot be said to function as an enforcement mechanism for § 50. We decline to make § 1144(d) into an expansive savings clause; we hold that the savings clause of § 1144(d) does not save the defendants' ruling from ERISA preemption. See Hydrostorage, 891 F.2d at 731-32 (state law encouraging apprenticeship programs not saved from ERISA preemption by § 1144(d)); MacDonald, 949 F.2d at 275 (wage law favoring state apprenticeship programs not saved from ERISA preemption).
 
 IV
 
 29
 We conclude that ERISA preempts defendants' ruling that helpers working on state public works projects must be paid at the wage rate required for mechanics unless the helpers are participating in a BAT approved apprenticeship program. A state may not try to discourage certain ERISA training programs by imposing a higher wage rate for workers enrolled in them while allowing a lower wage rate for workers enrolled in different ERISA training programs. Because we find ERISA preemption, we do not address the NLRA preemption issue. The judgment of the district court is REVERSED.
 
 
 
 [1]
 The Second and Ninth Circuits have found an additional, although not well-defined, "purpose" requirement arising out of § 1144(c)(2) which defines "State." See, e.g., Electrical Joint Apprenticeship Comm. v. MacDonald, 949 F.2d 270, 274 (9th Cir.1991); Martori Bros. Distribs. v. James-Massengale, 781 F.2d 1349, 1356 (9th Cir.), modified, 791 F.2d 799 (9th Cir.), cert. denied, 479 U.S. 1018, 107 S.Ct. 670, 93 L.Ed.2d 722 (1986); Rebaldo v. Cuomo, 749 F.2d 133, 137 (2d Cir.1984), cert. denied, 472 U.S. 1008, 105 S.Ct. 2702, 86 L.Ed.2d 718 (1985). This requirement is that the "state law must 'purport[ ] to regulate, ... the terms and conditions of employee benefit plans' to fall within the preemption provision." Rebaldo, 749 F.2d at 137. The existence of a distinct and limiting "purpose" requirement, however, has been rejected by the Supreme Court which held that § 1144(c)(2) "expands, rather than restricts" the reach of ERISA preemption. Ingersoll-Rand, 111 S.Ct. at 484. "Had Congress intended to restrict ERISA's pre-emptive effect to state laws purporting to regulate plan terms and conditions, it surely would not have done so by placing the restriction in an adjunct definition section while using the broad phrase 'relate to' in the pre-emption section itself." Id
 
 
 [2]
 Section 2510.3-1(b) states:
 Payroll practices. For purposes of title I of the Act and this chapter, the terms "employee welfare benefit plan" and "welfare plan" shall not include--
 (1) Payment by an employer of compensation on account of work performed by an employee, including compensation at a rate in excess of the normal rate of compensation on account of performance of duties under other than ordinary circumstances, such as--
 (i) Overtime pay,
 (ii) Shift premiums,
 (iii) Holiday premiums,
 (iv) Weekend premiums; ....
 
 
 [29]
 C.F.R. § 2510.3-1(b)
 
 
 [3]
 Section 50 provides:
 The Secretary of Labor is authorized and directed to formulate and promote the furtherance of labor standards necessary to safeguard the welfare of apprentices, to extend the application of such standards by encouraging the inclusion thereof in contracts of apprenticeship, to bring together employers and labor for the formulation of programs of apprenticeship, to cooperate with State agencies engaged in the formulation and promotion of standards of apprenticeship, and to cooperate with the Office of Education under the Department of Health, Education, and Welfare in accordance with section 17 of Title 20.
 
 
 [4]
 The federal government does not discourage the NEIEP with a prohibitive wage structure as defendants seek to do. The U.S. Department of Labor recognizes the helper category and allows the lower wage rate for helpers on federal public works projects in Oklahoma. See United States Dep't of Labor, General Wage Decision No. OK88-18