**ASSOCIATED BUILDERS AND CONTRACTORS, etc., et al., Plaintiffs,**

v.

**James CURRY, etc., et al., Defendants.**

**WALTHER ELECTRIC COMPANY, etc., et al., Plaintiffs,**

v.

**James CURRY, etc., et al., Defendants.**

**Nos. C–90–3597 FMS, C–91–0539 FMS.**

United States District Court, N.D. California.

July 15, 1992.

Mark R. Thierman, Robert Fried, John W. Prager, Jr., Thierman Cook Brown & Prager, David E. Sirias, Hanson Bridgett

Marcus Vlahos & Rudy, San Francisco, Cal., for plaintiffs.

Miles E. Locker, Div. of Labor Standards Enforcement, Dept. of Industrial Relations, San Francisco, Cal., for James Curry.

James D. Fisher, Dept. of Industrial Relations, John M. Rea, Dept. of Industrial Relations, San Francisco, Cal., for Ronald T. Rinaldi.

## ORDER GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANTS

FERN M. SMITH, District Judge.

### INTRODUCTION

This Order addresses the merits of motions for summary judgment in the two above-captioned cases.

In the first action, the Golden Gate Chapter of the Associated Builders and Contractors (ABC) seeks summary judgment granting injunctive relief against California State Labor Commissioner James Curry and California Director of Industrial Relations Ronald T. Rinaldi ordering that ABC's various federally-approved "training programs" for construction trades be treated as "apprenticeship programs" for purposes of state public works contracts and/or to bar application of California's prevailing wage statute to its training programs. As grounds for the injunction, ABC asserts that state authority is preempted by three federal statutes, the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001–1381 (ERISA), the Fitzgerald Act, 29 U.S.C. §§ 50–50b and the National Labor Relations Act, 29 U.S.C. §§ 151–168 (NLRA). ABC also contends that the state's apprenticeship-approval system, as applied, violates the equal protection clause of the Fourteenth Amendment.

In the second action, Walther Electric Company seeks similar relief against the same defendants on the same general grounds. The facts differ materially in some respects as described below.

The parties to both cases agree that no material facts are in dispute. Because the

legal issues in both cases overlap substantially, this Order addresses the legal issues jointly.

The Court makes three major findings regarding plaintiffs' ERISA arguments:

(1) Plaintiffs' "training programs," approved pursuant to the Davis–Bacon Act, are not legally equivalent to "apprenticeship programs" approved pursuant to the Fitzgerald Act and the California Apprenticeship Act.

(2) For this reason, the California Apprenticeship Act and regulations thereunder do not "relate to" or "purport to regulate" plaintiffs' training programs and are not, as plaintiffs contend, preempted by ERISA.

(3) California's prevailing wage law mandates that contractors pay journeyman wages to enrollees in their "training programs" when employing them on state public works projects, but does not thereby "relate to" or "purport to regulate" plaintiffs' training programs and is not preempted by ERISA.

For the reasons stated herein, plaintiffs' contentions regarding preemption by the Fitzgerald Act and the NLRA are similarly without merit. The Court therefore grants summary judgment for the defendants in both actions.

## FACTUAL BACKGROUND

### A. *ABC v. Curry*

In the early 1980s, ABC set out to establish training programs in several job classifications, including electrical, plumbing, insulation, carpenters, cement masons, heating and air conditioning, sheetmetal and operating engineers. Between 1982 and 1985, the United States Department of Labor's Bureau of Apprenticeship Training (BAT), a subdivision of the Employment and Training Administration (ETA), approved ABC's various programs as "training programs" for purposes of the employment of enrollees on federal works projects pursuant to the provisions of the Davis–

Bacon Act, 40 U.S.C. section 276a and regulations thereunder (29 C.F.R. Part 5).

In 1987, finding the ABC training programs deficient in the areas of documenting the selection and training of trainees, completion rates,[1] and equal opportunity employment, BAT imposed a moratorium on new enrollments. This restriction remained in effect until August of 1990.

In November 1989, meanwhile, ABC applied to have its training programs approved as California-recognized apprenticeship programs under the California Apprenticeship Act, California Labor Code Division 3, Chapter 4, sections 3070 *et seq.* and its implementing regulations, Cal.Code Regs., tit. 8, §§ 200 *et seq.* State approval of apprenticeship programs authorizes program sponsors to pay enrollees employed on state public works projects the prevailing wage for apprentices (Labor Code section 1777.5); without approval, sponsors must pay enrollees the prevailing wage for journeymen under California's prevailing wage statute (Labor Code section 1771) when employing them on state public works projects. Section 1777.5, in effect, authorizes a limited and carefully-regulated exception to California's prevailing wage law for state-funded projects.

The California Apprenticeship Council (CAC), which is located within the California Department of Industrial Relations's Division of Apprenticeship Standards (DAS), exercises approval authority over apprenticeship programs pursuant to the Fitzgerald Act, 29 U.S.C. § 50 and 29 C.F.R. §§ 29.12. The federal regulations establish criteria under which BAT may recognize an appropriate state agency as a "state apprenticeship agency" or "state apprenticeship council" (SAC) for the purpose of registering local apprenticeship programs for federal purposes. 29 C.F.R. § 29.12. The CAC has at all times relevant to this action been formally recognized by the BAT as authorized to register and ap-

---

**1.** ABC concedes that between 1982 and 1990, no trainee ever completed any of ABC's training programs.

prove apprenticeship programs pursuant to the Fitzgerald Act and its regulations.[2]

Under the authority of the California Apprenticeship Act, the CAC promulgates rules and regulations establishing minimum standards of wages, hours, and working conditions for apprentices. *See* Cal. Code Regs. tit. 8 (§§ 200 *et seq.*). Section 212 of the regulations provides that "[a]pprenticeship programs shall be established by written standards approved by the Chief of DAS" and sets forth a detailed list of program standards that must be provided for before the program is approved. Cal. Code Regs. tit. 8, § 212.

ABC's application for state approval did not go smoothly. After DAS requested a substantial amount of additional information in support of the application, ABC abandoned the application process.

Meanwhile, in 1990, while the federal restriction on new enrollments to its training programs was still in effect, ABC applied to BAT to have one or more programs approved as "apprenticeship programs" for federal purposes under the Fitzgerald Act, 29 U.S.C. §§ 50 *et seq.* and its implementing regulations at 29 C.F.R. Part 29. BAT found the programs deficient under the standards promulgated under the Fitzgerald Act and on that basis returned the application to them, identifying the deficiencies in the program.[3]

In December of 1990, ABC filed this lawsuit.

## B. *Walther Electric v. Curry*

As relevant here, Walther Electric differs from ABC in that Walther Electric sought approval as an apprenticeship program for state purposes from the CAC and obtained preliminary approval from the Chief of DAS. Other state-approved apprenticeship programs in the area appealed that decision to the CAC.

On October 1, 1990, the CAC issued a written opinion reversing the DAS Chief's preliminary approval on the following grounds: (1) that Walther Electric had failed to show the need for a new program, citing California Labor Code section 3075;[4] and (2) that approval of Walther Electric's program as a "joint" program was improper under the standards articulated in the federal Fitzgerald Act regulations, because the employee committee member was not a "bona fide employee representative." The CAC also noted evidence that some members of the committee were not qualified to serve in a supervisory capacity. The CAC remanded the program to the DAS Chief for further action. The record contains no information as to the outcome of further proceedings, if any.

Walther Electric then sought and obtained, on November 30, 1990, registration of its program by the BAT as a training program under the Davis–Bacon Act and its accompanying regulations.

On February 22, 1991, Walther Electric and the Walther Electric Training Committee filed this lawsuit.

## DISCUSSION

### A. *Issues Presented On These Motions*

1. *ERISA Preemption:* Whether ERISA's preemption provision entitles the ABC and Walther Electric training programs to state approval (or to use apprentice wage levels without state approval)

---

**2.** The federal regulations separately provide for the BAT to register apprenticeship programs directly as conforming with federal standards for federal purposes. 29 C.F.R. § 29.3. According to the testimony of the BAT Regional Director, BAT limits its direct approval of programs operating within states with BAT-recognized SACs (such as California) for federal agencies, Indian reservations and multi-state employers.

**3.** The record contains no explanation for ABC's decision to submit an application for Fitzgerald Act approval directly to the federal agency, even while its application for Fitzgerald Act approval was pending before the CAC, as further discussed herein.

**4.** Another district court recently found preempted by ERISA the portion of section 3075 allowing the CAC to withhold approval on this ground and ruled that the CAC could not withhold approval of an apprenticeship program meeting all requirements of 29 C.F.R. § 29 on that ground. *Associated General Contractors of America v. Smith, et al.,* No. 91–1724 (S.D.Cal. April 19, 1992). Plaintiffs here, however, do not challenge this portion of the CAC's decision.

because the programs have secured federal approval as "training programs" under the Davis–Bacon Act.

2. *Fitzgerald Act Preemption:* Whether the Fitzgerald Act preempts California's apprenticeship program approval requirements.

3. *NLRA Preemption:* Whether Labor Code section 1777.5 violates and is preempted by the NLRA by its reference to "the *joint* apprenticeship committee administering the apprenticeship standards of the draft or trade in the area of the site of the public work" (emphasis added).

4. *Fourteenth Amendment Equal Protection:* Whether the equal protection clause of the Fourteenth Amendment requires state approval—and access to section 1777.5's exception to the prevailing-wage statute—for Davis–Bacon Act training programs.

The Court addresses each of these issues in turn.

## B. *ERISA Preemption*

This Court recently found that ERISA does not preempt California's laws establishing and enforcing minimum apprenticeship standards. In *Dillingham Constr. N.A., Inc. v. County of Sonoma,* 778 F.Supp. 1522 (N.D.Cal.1991).

There, the Court agreed that the apprenticeship program at issue was an "employee welfare benefit plan" within the meaning of ERISA section 3(1), 29 U.S.C. § 1002(1) and that ERISA's preemption clause, 29 U.S.C. § 1144(a), reached the state laws at issue. *Dillingham,* 778 F.Supp. at 1527–28, *citing Hydrostorage, Inc. v. Northern California Boilermakers,* 891 F.2d 719 (9th Cir.1989), *cert. denied,* — U.S. —, 111 S.Ct. 72, 112 L.Ed.2d 46 (1990).

The Court further found, however, that ERISA's savings clause, 29 U.S.C. § 1144(d), preserved the provisions of the Fitzgerald Act, 29 U.S.C. §§ 50. Following the Ninth Circuit's analysis in *Electrical Joint Apprenticeship Committee v. MacDonald,* 949 F.2d 270 (9th Cir.1991), *cert. denied,* — U.S. —, 112 S.Ct. 2991, 120

L.Ed.2d 869 (1992), the Court concluded that state approval functions adopted pursuant to the Fitzgerald Act and its implementing regulations (specifically, 29 C.F.R. § 29.12) and approved by the BAT thereunder are not preempted by ERISA. State approval functions that lie outside the "Fitzgerald Act spotlight" (*see Dillingham,* 778 F.Supp. at 1529), however, find themselves within ERISA's preemptive scope and not saved by the Fitzgerald Act or any other federal statute; such provisions are preempted.

The *MacDonald* court found Nevada's effort to subject BAT-approved apprenticeship programs to separate state SAC approval requirements preempted by ERISA, but made clear that, notwithstanding the sweeping language of *Hydrostorage,* the states can continue to exercise those roles in apprenticeship regulation that are not preempted by ERISA. That court explained that

> [t]here is no exemption from the broad preemption provision of section 514(a) of ERISA *except for* the federal Fitzgerald Act and the regulations issued thereunder ... Thus, any state regulation of apprenticeship programs that is separate and apart from the authorization given by the Fitzgerald Act and its accompanying regulations is preempted by section 514(a) of ERISA.

*Id.* at 274 (emphasis added). The court also made clear that both the BAT and the federally-authorized state agencies exercise non-preempted approval functions under the Fitzgerald Act and its regulations:

> 29 C.F.R. § 29.3 provides for a dual system of approval and recognition so that either the BAT or the State Apprenticeship Council can approve an apprenticeship program for federal purposes. However, either agency is constrained in its approval to apply the requirements and standards of the federal regulations.

*Id.* at 273.

This Court concluded that the State approval requirement fell squarely within the state's delegated jurisdiction under the Fitzgerald Act and that preemption of the

state approval requirement would unquestionably impair the purposes of the Fitzgerald Act as articulated in the Act itself and in its regulations:

> The purpose of this part is to set forth labor standards to safeguard the welfare of apprentices, and to extend the application of such standards by prescribing policies and procedures concerning the registration, for certain Federal purposes, of acceptable apprenticeship programs with the U.S. Department of Labor.... These labor standards, policies and procedures cover the registration, cancellation and deregistration of apprenticeship programs and of apprenticeship agreements; the recognition of a State agency as the appropriate agency for registering local apprenticeship programs for certain Federal purposes; and matters relating thereto.

29 C.F.R. § 29.1. Therefore, this Court found the state approval requirement saved from preemption.

*Dillingham* thus recognizes California's right to regulate apprenticeships to the extent authorized by the Fitzgerald Act and its regulations. The instant cases, however, present the questions whether (1) a BAT-approved training program under the Davis–Bacon Act must be regarded for purposes of state approval as equivalent to a BAT-approved apprenticeship program under the Fitzgerald Act; and (2) if not, whether the state may enforce its prevailing wage law against Davis–Bacon· Act training programs not separately approved as apprenticeship programs under the Fitzgerald Act by either the CAC or BAT.

First, because ERISA defines "employee welfare benefit plan" to include "apprenticeship or other training programs" "established or maintained by an employer or by an employee organization, or by both ...," 29 U.S.C. § 1002(1), the training program at issue here qualifies as an "employee welfare benefit plan" within ERISA's reach.

The Davis–Bacon Act provides that public works contracts by the United States and the District of Columbia must pay prevailing wages, as determined by the Secretary of Labor, for the "corresponding classes of laborers and mechanics employed on projects of a character similar to the contract work in the city, town, village, or other civil subdivision of the State in which the work is to be performed...." 40 U.S.C. § 276a. The Davis–Bacon Act also provides that "[s]ections 276a to 276a–5 of this title shall not be construed to supersede or impair any authority otherwise granted by Federal law to provide for the establishment of specific wage rates."

The regulations under the Davis–Bacon Act, at 29 C.F.R. Part 5, provide distinct definitions of apprentices and trainees. An "apprentice" is defined at 29 C.F.R. § 5.2(n)(1) as

> a person employed and individually registered in a bona fide apprenticeship program registered with the U.S. Department of Labor Employment and Training Administration, Bureau of Apprenticeship and Training, or with a State Apprenticeship Agency recognized by the Bureau....

A "trainee" is defined as

> a person registered and receiving on-the-job training in a construction occupation under a program which has been approved in advance by the U.S. Department of Labor, Employment and Training Administration, as meeting its standards for on-the-job training programs and which has been so certified by that Administration.

29 C.F.R. § 5(n)(2).

The provisions regarding wage rates for these two categories are set forth at 29 C.F.R. § 5.5(a)(4):

> Apprentices will be permitted to work at less than the predetermined rate for the work they performed when they are employed pursuant to and individually registered in a bona fide apprenticeship program registered with the [BAT].... In the event the Bureau of Apprenticeship and Training, or a State Apprenticeship Agency recognized by the Bureau, withdraws approval of an apprenticeship program, the contractor will no longer be permitted to utilize apprentices at less than the applicable predetermined rate

for the work performed unless an acceptable program is approved.

[T]rainees will not be permitted to work at less than the predetermined rate for the work performed unless they are employed pursuant to and individually registered in a program which has received prior approval, evidenced by formal certification by the U.S. Department of Labor, Employment and Training Administration.... In the event the Employment and Training Administration withdraws approval of a training program, the contractor will no longer be permitted to utilize trainees at less than the applicable predetermined rate for the work performed until an acceptable program is approved.

The Secretary of Labor is charged with determining prevailing wage rates for various classifications of workers. 29 C.F.R. § 5.5(a)(1). In addition, 29 C.F.R. section 5.17 sets forth the criteria by which the ETA may withdraw approval of a Davis–Bacon Act training program.[5]

Where apprentices are concerned, these regulations make reference to the BAT's and the states' approval authority under the Fitzgerald Act and its regulations, though they do not cite those regulations specifically. The Davis–Bacon Act regulations alone govern the subject of trainees; the Fitzgerald Act regulations make no reference to them. The Davis–Bacon Act and its regulations do not provide, as the Fitzgerald Act does, for delegation of authority over trainees to the states.

■ This analysis leads to the presumption that state laws "relating to" and "purporting to regulate" training programs are preempted by ERISA and not saved by the Fitzgerald Act or the Davis–Bacon Act. The question remains whether these cases present a challenge to any such law. This Court concludes that they do not.

**1. Section 1777.5**

■ The focus of the *Hydrostorage* and *Dillingham* decisions was California Labor Code section 1777.5, a detailed statute specifying the conditions under which apprentices may be employed on state public works projects and paid apprentice wage rates. An "apprentice" for these purposes is exclusively defined to be "in training under apprenticeship standards and written apprentice agreements under Chapter 4 ..., Division 3, of the Labor Code." That chapter, beginning at section 3070, authorizes the state regulations governing approvals of apprenticeship programs (Cal. Code Regs. tit. 8 §§ 200 *et seq.*).

The instant cases do not present a valid ERISA challenge to these statutes because the plaintiffs' programs are "training programs," not "apprenticeship programs." Implicit in the plaintiffs' request for relief is the argument that Davis–Bacon Act training programs are entitled to automatic state approval as apprenticeship programs for purposes of state public works contracts because they are somehow equivalent to apprenticeship programs under the Fitzgerald Act. There is no support for this argument in any relevant statute or regulation.

As previously discussed, the Davis–Bacon Act regulations themselves define apprentices and trainees separately, and treat these as legally distinct, not overlapping, classifications. There are, moreover, significant differences between the two. Whereas the Fitzgerald Act regulations set forth detailed minimum standards that apprenticeship programs must meet to be eligible for approval (29 C.F.R. § 29.5), and minimum criteria for apprenticeship agreements (29 C.F.R. § 29.6), the Davis–Bacon Act regulations contain no such standards or criteria. Davis–Bacon Act training programs are reportedly evaluated under standards set forth in "Circular 72–15," an internal BAT document generated in 1972 as an "interim" guide to implementing 29

5. That provision states:
   If at any time the [ETA] determines, after opportunity for a hearing, that the standards of any program ... have not been complied with, or that such a program fails to provide adequate training for participants, a contractor will no longer be permitted to utilize trainees at less than the predetermined rate for the classification of work until an acceptable program is approved.

C.F.R. section 5a, a regulation that was revoked in 1975. *See* 40 Fed.Reg. 30480, 30483 (July 21, 1975). The standards set forth in Circular 72–15 were never formalized through the public rulemaking procedures that govern the promulgation of federal regulations.

Given these legislative and administrative facts, it would be contrary to law to deem Davis–Bacon Act training programs to be the legal equivalents of Fitzgerald Act apprenticeship programs for registration ·and approval purposes at the state level. Such a ruling would, moreover, be entirely beyond the proper scope of this Court's power: it would amount to legislating a legal status for Davis–Bacon Act programs that Congress and the executive agencies have thus far declined to confer.

Davis–Bacon Act training programs are not therefore entitled to automatic approval as apprenticeship programs for purposes of state public works projects; state public works contractors employing Davis–Bacon Act trainees on state public works projects must pay them in accordance with the state's prevailing wage law, Cal.Labor Code section 1771.

## 2. Section 1771

■ The only other theory under which the plaintiffs could assert that ERISA's preemption clause entitles them to pay Davis–Bacon Act trainees less than the prevailing wage for journeyman would be by arguing that section 1771, the prevailing wage law, is a state law "relating to" and "purporting to regulate" an ERISA welfare benefit plan. That theory, even had plaintiffs explicitly made such argument, is without merit.

As the Ninth Circuit stated in *Martori Bros. Distributors v. James–Massengale*, 781 F.2d 1349 (9th Cir.), *modified*, 791 F.2d 799 (9th Cir.), *cert. denied*, 479 U.S. 949, 107 S.Ct. 435, 93 L.Ed.2d 385 and 479 U.S. 1018, 107 S.Ct. 670, 93 L.Ed.2d 722 (1986), "while the scope of section 514(a) is broad, it is not all-encompassing," and, in particular, "[w]e must ... presume that [in enacting ERISA] Congress did not intend to preempt areas of traditional state regulation."

*Id.* at 1356 *quoting, Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985). State laws that "relate to" ERISA welfare benefit plans within the meaning of ERISA fall into four categories:

First, laws that regulate the type of benefits or terms of ERISA plans. Second, laws that create reporting, disclosure, funding, or vesting requirements for ERISA plans. Third, laws that provide rules for the calculation of the amount of benefits to be paid under ERISA plans. Fourth, laws and common-law rules that provide remedies for misconduct growing out of the administration of the ERISA plan. The principle underlying all of these decisions would appear to be that the state law is preempted by section 514(a) if the conduct sought to be regulated by the state law is "part of the administration of an employee benefit plan"; that is, the state law is preempted if it regulates matters regulated by ERISA: disclosure, funding, reporting, vesting, and enforcement of benefit plans.

*Id.* at 1357–58. In addition, state laws must not only "relate to" but "purport to regulate" employee welfare benefit plans in order to fall within ERISA's reach. *Id.* at 1359. Prevailing wage laws, *per se*, do none of these.

The Supreme Court has observed that "[s]tates possess broad authority under their police powers to regulate the employment relationship within the State. Child labor laws, minimum and other wage laws, laws affecting occupational health and safety ... are only a few examples." *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 756, 105 S.Ct. 2380, 2397–98, 85 L.Ed.2d 728, *quoting De Canas v. Bica*, 424 U.S. 351, 96 S.Ct. 933, 47 L.Ed.2d 43 (1976). *See also, Siuslaw Concrete Constr. Co. v. Washington Dep't of Transp.*, 784 F.2d 952, 958 (9th Cir.1986) (minimum and other wage laws are a valid exercise of the state's police power). *Cf. National Elevator Indus., Inc. v. Calhoon*, 957 F.2d 1555, 1558 (10th Cir.1992) ("General application wage laws, though

they incidentally may affect ERISA plans, are well within a state's traditional police powers and not preempted by ERISA.")

Some courts have reasoned that, though wages *per se* are not ERISA welfare benefit plans falling within ERISA's preemptive scope, prevailing wage laws that are calculated in part by reference to prevailing benefits may be subject to ERISA preemption. *See General Electric Co. v. New York State Dep't of Labor*, 891 F.2d 25 (2nd Cir.1989), *cert. denied*, 496 U.S. 912, 110 S.Ct. 2603, 110 L.Ed.2d 283 (1990) (prevailing wage law requiring ex-locality employers to bring "supplements" consisting of remuneration in the form of various noncash employee benefits into conformity with those prevailing in the locality or to make up the difference in cash payments held preempted by ERISA); *Associated Builders & Contractors v. Baca*, 769 F.Supp. 1537 (N.D.Cal.1991) (city and county ordinances providing for payment of prevailing *per diem* wages as defined in Cal.Labor Code section 1773.1 on private construction projects held preempted where statutory definition of *per diem* wages includes adding the monetary value of prevailing benefits to the wage base). This Court declines to follow the reasoning of these opinions.[6]

Section 1773.2 requires the body taking bids for a public works contract to specify in the call for bids, or to make available to bidders, "the general rate of per diem wages ... for each craft, classification or type of workman needed to execute the contract." Section 1773 specifies the method by which prevailing wage rates are determined. The onus of determining prevailing wage rates lies on the Director of Industrial Relations, who must primarily "ascertain and consider the applicable wage rates established by collective bargaining agreements and such rates as may have been predetermined for federal public works, within the locality and in the nearest labor market area." § 1773. *Per diem* wages "shall be deemed to include employer payments for health and welfare, pension, vacation, travel time, and subsistence pay ..., apprenticeship or other training programs ... and similar purposes...."[7]

The manifest purpose of section 1771 is to guarantee that public works contractors pay prevailing wages to their employees and do not compete in bidding on public works projects based on lower-than-prevailing wage rates. Sections 1773 and 1773.1 are designed to level the playing field among bidders on public works projects by counting payments for prevailing benefits toward the determination of prevailing wages. If only straight-time pay counted towards prevailing wages, bidders who paid prevailing benefits would be placed at a competitive disadvantage in bidding on public works projects vis-a-vis bidders who offered no benefits. On the other hand, by including the value of prevailing "employer payments" for benefits, the statutes do not mandate that bidders provide such bene-

---

**6.** Plaintiffs urge that the Ninth Circuit's decision in *Local Union 598 v. J.A. Jones Construction Co.*, 846 F.2d 1213 (9th Cir.), *aff'd*, 488 U.S. 881, 109 S.Ct. 210, 102 L.Ed.2d 202 (1988) supports their position that ERISA preempts California's prevailing wages law. In *Jones*, however, the Ninth Circuit found the State of Washington's prevailing wage statute preempted insofar as it mandated a particular level of contributions by employers to employee benefit plans, explaining that the challenged provision ran afoul of the second prong of the *Martori* test (laws that create funding requirements for ERISA plans). As explained more fully below, section 1771 does not mandate contribution levels or otherwise "relate to" ERISA benefit plans under any of the criteria set forth in *Martori*.

**7.** This definition is further defined in the Department of Industrial Relations' implementing regulations. California Code of Regulations title 8, section 16000 defines "general prevailing rates of per diem wages" to include:

(1) The prevailing basic straight-time hourly rate of pay; and
(2) The prevailing rate for holiday and overtime work; and
(3) The prevailing rate of employer payments for any or all programs or benefits for employees, their families and dependents, and retirees [as enumerated]; and
(4) Travel time and subsistence pay ...

The definition also enumerates categories of employer payments that are not counted toward the prevailing *per diem* wage rate, such as union, organizational, professional or other dues, political contributions, and benefits required by federal, state or local law.

fits, only that they provide the value thereof.

*ABC v. Baca* found ordinances that relied on sections 1773 and 1773.1 preempted because

the definition of *per diem* wages necessitates reference to, and calculation of, employer contributions to employee benefit plans. Complex calculations are required to determine the prevailing base wage rate that must be paid. The calculations can only be made after referencing the dollar value of benefits paid. Thus, the wage requirement incorporates employee benefits into the prevailing wage statute.

769 F.Supp. 1537 (N.D.Cal.1991).

This Court respectfully disagrees with the proposition that the Director of Industrial Relations's duty to incorporate the value of prevailing benefits into the determination of prevailing wages either "relates to" or "purports to regulate" employee benefit plans. More persuasive is the dissent in *General Electric Co. v. New York State Dept. of Labor,* which observed that

[r]egulation of labor costs in public works projects is surely a valid exercise of the state's traditional regulatory authority. As we have previously emphasized, where a law claimed to be superseded by ERISA "is an exercise of a State's police powers," the law should not be held preempted "unless this conclusion is unavoidable." ... While preemption may be an unavoidable conclusion where a state law explicitly singles out ERISA plans for different treatment, ... or directly alters the calculation or payment of benefits under ERISA-covered pension plans, ... or creates a cause of action to enforce a right granted by ERISA, ... no such problem is presented by the statute.... The fact that employers may choose to comply with the law by providing a different benefits plan or a combination of benefits and cash rather than by simply paying the additional

costs as wages, does not render the statute preempted.

891 F.2d at 30–31 (Pratt, J., dissenting).

ERISA does not, therefore, preempt section 1771. The determination of prevailing wages for public works projects, and the requirement that contractors pay them, lies squarely within the state's exercise of its traditional police powers. The fact that prevailing wage levels are calculated in part by reference to the value of prevailing benefits does not mean that the prevailing wage statutes "relate to" or "purport to regulate" ERISA benefit plans under the standards articulated by the Ninth Circuit in *Martori Brothers* and other cases.

Finally, plaintiffs argue that *National Elevator Industry, Inc. v. Calhoon,* 957 F.2d 1555 (10th Cir.1992) supports the conclusion that section 1771 is preempted. There, the Tenth Circuit found invalid a state agency's interpretation of Oklahoma's prevailing wage law (but not the prevailing wage law itself) under which "an elevator constructor helper on state public works projects must be enrolled in a certified [BAT-approved apprenticeship or training] program in order to receive the rate of pay for apprentices and trainees rather than the rate of pay for mechanics." *Id.* at 1556. The court found the state's ruling preempted because it provided an option "favoring certain ERISA plans and benefits (BAT approved plans) over other ERISA plans and benefits (NEIEP)," *id.* at 1561, and explained:

If a state is permitted to use a prevailing wage scheme to single out and favor certain ERISA plans over other ERISA plans, the potential for abuse is great—a state could avoid ERISA's preemption provision and covertly disturb or alter ERISA plans.

*Id.* The rationale of *Calhoon* is inapposite to the facts of these cases. *Calhoon* concerned a state agency's interpretation of a general-application wage law; the agency's sole authority for "favoring" one ERISA benefit plan over another by granting selective exemptions to the law was its own exercise of discretion—not enough to avoid federal preemption. Under California's

statutory scheme, section 1771 is a general-application prevailing wage law not preempted by ERISA. Section 1777.5 authorizes a limited and carefully-regulated exemption to section 1771. This exemption is saved from preemption only by ERISA's savings clause and the federal Fitzgerald Act. Those portions of section 1777.5 not saved by the Fitzgerald Act are preempted. As these cases are presented to the Court, *Calhoon's* logic is not implicated. To conclude otherwise would mean that, to prevent the state from enforcing its general-application prevailing wage law for state public works, a contractor need only assert enrollment in employer- or employee organization-sponsored program calling itself an "apprenticeship or other training program," regardless of standards, qualifications, or other criteria. This result would vitiate, without any discernable legislative intent or purpose, the state's traditional power to regulate wages and to establish and enforce other labor standards.

Based on the foregoing analysis, the plaintiffs have identified no applicable state statute bearing on their training programs that is preempted by ERISA.

## C. *Fitzgerald Act Preemption*

█ The plaintiffs' assertion that the Fitzgerald Act preempts California's apprenticeship program approval scheme is without merit. As the Ninth Circuit recently stated in *MacDonald*, "[t]he contention that the Fitzgerald Act itself preempts state regulation has been foreclosed by our decision in *Siuslaw Concrete Constr. Co. v. Washington Dep't of Transp.*, 784 F.2d 952, 956–58 (9th Cir.1986)."

The Fitzgerald Act empowers the Secretary of Labor to take a variety of actions in relation to apprentices and apprenticeship programs, including

> to formulate and promote the furtherance of labor standards necessary to safeguard the welfare of apprentices, to extend the application of such standards by encouraging the inclusion thereof in contracts of apprenticeship, to bring together employers and labor for the formulation of programs of apprenticeship,

> [and] *to cooperate with State agencies engaged in the formulation and promotion of standards of apprenticeship*
> . . .

29 U.S.C. § 50. The Fitzgerald Act contains no preemption clause. The Fitzgerald Act regulations similarly contemplate an independent role for the states in developing apprenticeship standards. Nothing in those regulations appears to require states to adopt standards, policies and procedures identical to the federal criteria. On the contrary, they appear to give states latitude within the framework of the Fitzgerald Act regulations. 29 C.F.R. section 29.-12(b) sets forth "basic" requirements. 29 C.F.R. section 29.12(a)(5) requires states to submit, with their applications for authorization, "[a] description of policies and operating procedures which depart from or impose requirements in addition to those prescribed in [the federal regulations]."

In *Hillsborough County v. Automated Medical Labs., Inc.*, 471 U.S. 707, 713, 105 S.Ct. 2371, 2375, 85 L.Ed.2d 714 (1985), the United States Supreme Court articulated the standard for inferring congressional intent to preempt state laws

> In the absence of express pre-emptive language, Congress' intent to pre-empt all state law in a particular area may be inferred where the scheme of federal regulation is sufficiently comprehensive to make reasonable the inference that Congress "left no room" for supplementary state regulation.... Pre-emption of a whole field also will be inferred where the field is one in which "the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state law on the same subject."

(citations omitted).

As the Ninth Circuit observed in *Siuslaw Concrete Constr. Co. v. Washington Dep't of Transp.*, 784 F.2d 952 (9th Cir.1986), wages and other working conditions of apprentices fall within the scope of the state's traditional police powers, and state statutes are presumed valid absent a clear congressional intent to preempt this area. *Id.* at 958, *citing Metropolitan Life Ins. Co. v.*

*Massachusetts,* 471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985).

Here, congressional intent to occupy the field of apprenticeship standards is absent, and the federal interest, far from being dominant, operates as a supplement to the state's traditional police powers over apprentices' wages and working conditions.

Further, in light of the Court's holding that Davis–Bacon Act training programs are not legally equivalent to Fitzgerald Act apprenticeship programs, the plaintiffs' argument regarding Fitzgerald Act preemption would, in any event, be unavailing.

D. *NLRA Preemption*

■ Both plaintiffs seek to challenge California's apprenticeship program approval scheme on grounds that California Labor Code section 1777.5 violates—and is preempted by—section 8 of the NLRA, 29 U.S.C. § 158, by allegedly requiring contractors wishing to employ apprentices to affiliate with organized labor. They specifically attack the portion of section 1777.5 that states

> [w]hen the contractor to whom the contract is awarded by the state ..., in performing any of the work under the contract or subcontract, employs workers in any apprenticeable craft or trade, the contractor and subcontractor shall apply to the *joint apprenticeship committee* administering the apprenticeship standards of the craft or trade in the area of the site of the public work for a certificate approving the contractor ... under the apprenticeship standards for the employment and training of apprentices in the area or industry affected.

The same provision contains consistent references to "joint apprenticeship committees" throughout.

Labor Code section 3075 states that apprenticeship program sponsors may be "joint apprenticeship committee[s], unilateral management or labor committee[s], or ... individual employer[s]." *see also* tit. 8 Cal.Code Regs. § 205(g) (same). These provisions find their counterpart in the Fitzgerald Act regulations at 29 C.F.R. section 29.2(i):

*Apprenticeship committee* shall mean those persons designated by the sponsor to act for it in the administration of the program. A committee may be *joint,* i.e., it is composed of an equal number of representative of the employer(s) and of the employees represented by a bona fide collective bargaining agent(s) and has been established to conduct, operate, or administer an apprenticeship program and enter into apprenticeship agreements with apprentices. A committee may be *unilateral* or *non-joint* and shall mean a program sponsor in which a bona fide collective bargaining agent is not a participant.

(emphasis in original).

The Court finds that neither plaintiff has standing to challenge section 1777.5 on the grounds asserted. To assert standing, a plaintiff must have "personally suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant, that can be fairly traced to the defendant's challenged conduct and which is likely to be redressed by a favorable decision." *LaDuke v. Nelson,* 762 F.2d 1318, 1323 (9th Cir.1985), *modified,* 796 F.2d 309 (9th Cir.1986), *citing, Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 472, 102 S.Ct. 752, 760, 70 L.Ed.2d 700 (1982).

The challenged portions of section 1777.5 apply to a procedure entirely separate and distinct from the process of securing CAC approval of a proposed apprenticeship program: the process by which a contractor whose bid on a state public works project has been accepted applies to established apprenticeship committees for approval of its proposed use of apprentices. Labor Code section 3075, cited above, and its parallel regulation clearly authorize the state to approve apprenticeship programs sponsored by "joint apprenticeship committees," by unilateral (management-only or labor-only) committees or by single employers. Hypothetically, a sponsor of an approved non-joint apprenticeship program might have standing to challenge the portions of section 1777.5 at issue if it found that

successful bidders were somehow inhibited from employing its apprentices because of the language of section 1777.5.[8] Here, neither plaintiff has ever had a state-approved non-joint apprenticeship program; therefore, neither plaintiff can assert that it has been injured by the challenged portions of section 1777.5.

ABC, indeed, has never completed the process of applying for state certification. The CAC found Walther Electric's application deficient *as a "joint" program* on a number of grounds. Nothing in the CAC's decision foreclosed Walther Electric from seeking approval of its program as a unilateral or single-employer program. The CAC's action in no way gives Walther Electric standing to challenge the provisions of section 1777.5 at issue.

E. *Fourteenth Amendment Equal Protection*

■ As their final argument, the plaintiffs assert that the equal protection clause of the Fourteenth Amendment prohibits California from enforcing its prevailing wage law against Davis–Bacon Act training programs, while providing an exemption from that law for state-approved apprenticeship programs.

Because the alleged discrimination against federally-approved training programs and/or trainees implicates neither a fundamental right nor a protected class, the Court must uphold the challenged legislative classification so long as it bears a "rational relation to a legitimate state interest." *Harris v. McRae,* 448 U.S. 297, 100 S.Ct. 2671, 65 L.Ed.2d 784 (1980).

The state's interest here is two-fold: first, enforcing its prevailing wage law and limiting exemptions to programs meeting clearly-enforceable requirements; second, insuring the integrity of apprenticeship programs and protecting both apprentices and the public by setting and enforcing standards for such programs for apprentices employed on state public works projects.

As the Court has already noted, Davis–Bacon Act training programs are not equivalent to Fitzgerald Act apprenticeship programs. The Davis–Bacon Act regulations define the two separately and lack, *inter alia,* standards for approving training programs, minimum training requirements and criteria for selecting trainees, all elements the Fitzgerald Act regulations and the corresponding California regulations contain. By subjecting Davis–Bacon Act training programs to the same approval requirements as state-approved apprenticeship programs, the state is taking reasonable measures to enforce its interests relating to wages and apprenticeship standards.

The equal protection challenge is without merit.

## CONCLUSION

The Court concludes that, based on the record before it, the plaintiffs' challenges to the state's approval requirements for apprenticeship programs and to enforcement of the state's prevailing wage law against Davis–Bacon Act training programs are either meritless or may not be maintained by these plaintiffs.

A training program is not an apprenticeship program. Plaintiffs seek to obtain the benefits of apprenticeship program approval without bearing the burden of developing programs that meet the federal-state Fitzgerald Act standards and complying with the application process for obtaining approval. If plaintiffs wish to reap the benefits of apprenticeship program approval, nothing bars them from seeking and obtaining such approval in the same manner as any other program proponent.

In view of the absence of contested issues of fact, and all legal issues presented on these motions having been resolved in

---

**8.** In reality, it is unlikely that such an injury would ever arise. The defendants have submitted uncontroverted evidence that the CAC, the agency charged with interpretation and enforcement of these statutes, interprets section 1777.5 to allow any apprentice from any approved apprenticeship program to be employed on projects covered by section 1777.5, and that programs with no union presence can be approved as "joint," provided they include bona fide employee representatives.

favor of the defendants, the Court finds the defendants entitled to summary judgment in these actions.

SO ORDERED.